54  757|
c70   19|

*In the matter of the Petition of* M. E. LOWE *for a Writ of Habeas Corpus.*

CITY SCAVENGERS—*Validity of Ordinance—Creation of a Monopoly.* Ordinance No. 1718 of the city of Topeka, entitled "An ordinance providing for city scavengers, prescribing the duties and regulations governing the same, providing a license therefor, fixing the fees to be charged, penalties for violating rules and regulations thereof, and repealing ordinance No. 694, published June 3, 1887, and ordinance No. 983, published July 19, 1889," as amended by ordinance No. 1744, attempts to authorize the creation of a monopoly of a lawful calling, is in restraint of trade, and void.

*Original Proceeding in Habeas Corpus.*

ON the 12th day of September, 1894, there was filed in the police court in the city of Topeka a duly verified complaint against M. E. Lowe, charging that, on the 11th day of September, 1894, and prior thereto, he did then and there unlawfully engage in the business of a city scavenger, contrary to the ordinances of the city of Topeka, and especially in violation of ordinance No. 1718, being an ordinance entitled "An ordinance providing for scavengers," etc., and of ordinances amendatory thereto. On the 13th of September, 1894, upon the written complaint filed against him, a warrant was issued by the police judge of the city to the chief of police, directing him to arrest M. E. Lowe and bring him before the police judge, to be dealt with according to law. On the 20th of September, 1894, M. E. Lowe presented his petition to one

of the justices of this court for a writ of *habeas corpus.* His petition, omitting caption, exhibits, and verification, was as follows:

"The petition of M. E. Lowe respectfully shows that he is unlawfully imprisoned, detained, confined and restrained of his liberty by H. C. Lindsey, chief of police of the city of Topeka, and Ed. Woodruff, keeper and jailer of the city prison of said city, in Shawnee county, in this state, at the city jail in the city of Topeka, in the county of Shawnee, Kansas; that the imprisonment, detention, confinement and restraint are illegal, and that the illegality thereof consists in this, to wit: That the only pretext or cause of such arrest and detention is by virtue of a warrant of arrest issued out of the police court of the said city, upon a complaint charging the petitioner with the alleged violation of a pretended ordinance of the city of Topeka, No. 1718, copies of which warrant, complaint and ordinance are hereto attached, marked exhibits 'A,' 'B,' and 'C' respectively; and that the said pretended ordinance is null and void in this, to wit: In attempting to create the office of city scavenger, for which there is no authority of law, and in giving the mayor authority to appoint a city scavenger, which is not provided for by law; in attempting to absolutely prohibit any person or persons from engaging in the business of a scavenger, unless appointed by the mayor and approved by the council; in attempting to break up the business of this petitioner, in which he has invested a large sum of money, and has been engaged in for several years; and for the further reason the ordinance is in derogation of the vested rights of this petitioner, under a contract entered into between himself and the city of Topeka in May of 1893, and which is now existing, in full force and effect, a copy of which contract is hereto attached, marked exhibit 'D,' and made a part of this petition. Wherefore, your petitioner prays that a writ of *habeas corpus* may be granted, directed to the said H. C. Lindsey and Ed. Woodruff, commanding them to have the body of this petitioner before the supreme court, at a time and place therein to be specified, to do and receive what shall then and there be considered by your honors concerning him, together with the time and cause of this detention and said writ; and that your petitioner may be restored to his liberty.     M. E. LOWE.

"J. S. ENSMINGER, *Attorney for Petitioner.*"

Section 1 of ordinance No. 1718, as amended by ordinance No. 1744, referred to in the petition as "Exhibit C," reads:

"SECTION 1. That § 1 of ordinance No. 1718 be and the same is hereby amended so as to read: Section 1. The mayor shall, at the regular meeting in May of each year, by and with the consent of the council, appoint two or more suitable persons, corporations or firms to act as city scavengers for the ensuing year, or who shall hold said position during the pleasure of the mayor and council. A license shall be issued to such persons, corporation or firm, in which shall be written or printed the name of the person to whom issued, the date thereof, and the time when the same shall expire; and all licenses issued to city scavengers shall expire on the 1st day of May next after the same are issued, unless sooner canceled by order of the mayor and council, and all licenses to city scavengers shall be signed by the city clerk and attested with the seal of the city. No license shall be issued to scavengers until all the requirements of this ordinance shall have been complied with: *Provided, however*, That it shall be the duty of the mayor, by and with the consent of the council, to appoint two or more suitable persons, corporations or firms to act as city scavenger until the regular meeting in May, 1895, or to fill a vacancy or vacancies, whenever the same shall occur before or after time, in the same manner as appointing for a full term."

Section 4 provides, among other things:

"It shall be the duty of the city scavenger to remove the contents of privy vaults and cesspools, dead animals, garbage, and offal, when directed by the city board of health or the mayor and council, and the contents of privy vaults and cesspools, when notified by citizens, in the manner hereinafter specified. Citizens may notify said city scavenger, verbally or in writing, of any cesspool or privy vault he or they may desire to have emptied, and shall tender therewith to said city scavenger the fee for such services as herein specified."

Section 6 contains the following provisions:

"It shall be unlawful for any person to engage in the business of a scavenger in the city of Topeka without procuring a license therefor in the manner herein provided, and any person, corporation or firm who shall so engage in such business shall be deemed guilty of a misdemeanor, and upon being

found guilty of said offense shall be fined in any sum not less than $5 nor more than $50 for each offense."

Subsequently a writ of *habeas corpus* was issued, and a return made attempting to justify the arrest and imprisonment of the petitioner under the provisions of city ordinance No. 1718, providing for city scavengers. The case was heard before the court at the October sitting for 1894. The opinion herein was filed March 9, 1895.

*J. S. Ensminger*, for petitioner.

*D. C. Tillotson*, city attorney, for respondent.

The opinion of the court was delivered by

ALLEN, J.: The only question in this case requiring consideration is as to the validity of ordinance No. 1718, providing for the appointment of city scavengers. By the terms of the ordinance, as amended by ordinance 1744, it is made the duty of the mayor, with the consent of the council, to appoint two or more suitable persons to act as city scavengers. The duties of the scavengers are prescribed at some length, and include a removal of the contents of privy vaults and cesspools, dead animals, garbage, and offal. The ordinance fixes the compensation to be paid by private persons for the cleaning of privy vaults and cesspools, and for the removal of dead animals, but not for any other scavenger work. By § 6, it is rendered unlawful for any person to engage in the business of a scavenger without having a license as prescribed by the ordinance, and a penalty is imposed for a violation of the ordinance. The right of the city council to pass this ordinance is claimed under subdivision 11 of § 11 of the act to incorporate and regulate cities of the first class, being chapter 18 of the General Statutes of 1889, which provides that the mayor and council shall have power

"*Eleventh.* To make regulations to secure the general health of the city; to prevent and remove nuisances; to regulate or prohibit the construction of privy vaults and cesspools, and to regulate or suppress those already constructed; to

compel and regulate the connection of all property with sewers; to suppress hogpens, slaughterhouses, and stock yards, or to regulate the same, and prescribe and enforce regulations for cleaning and keeping the same in order; and the cleaning and keeping in order of warehouses, stables, alleys, yards, private ways, outhouses, and other places where offensive matter is kept, or permitted to accumulate, and to compel and regulate the removal of garbage and filth beyond the limits of the city."

It is said that the ordinance is a reasonable regulation, enacted for the preservation of the health of the people of the city; that, of necessity, a large measure of discretion is reposed in the mayor and council in selecting the means necessary to preserve the health of the inhabitants; and that in enacting this ordinance the mayor and council have kept within the limits of their powers. That accumulations of filth, decaying carcasses, fermenting garbage, are not only offensive to the senses, but endanger the health of the community, must be conceded. It must also be admitted that the legislature may properly delegate to the mayor and council the power to make all necessary regulations for preserving the cleanliness of the city, and to prevent the accumulation of nuisances. This was the subject under consideration when the provision last quoted was incorporated in the statute. Have the mayor and council exceeded the limits of their authority? In support of the validity of the ordinance, *The Slaughterhouse Cases*, 16 Wall. 36, are cited. In these cases, the act of the legislature of Louisiana granting a corporation the exclusive right to maintain slaughterhouses in the parishes of Orleans, Jefferson, and St. Bernard, and prohibiting all other persons from maintaining and using slaughterhouses within those limits, was upheld, the chief justice and three of the associate justices dissenting.

In the case of *Butchers' Union Slaughterhouse Co. v. Crescent City Live Stock Landing Co.*, 111 U. S. 746, it was held that the exclusive privilege given to the slaughterhouse company for the term of 25 years, by the act under consideration in the case first cited, was not binding on the lawmaking

power for that period, but that, under the provisions of the new constitution the legislature, in the exercise of its police power on subjects affecting public health, might make other and different provisions and regulations, which would have the effect to deprive the company of its monopoly under the charter. The decision was placed on the ground that the power of a state legislature to make a contract of such a character that, under the provisions of the constitution of the United States, it cannot be modified or abrogated, does not extend to subjects affecting public health or public morals, so as to limit the future exercise of legislative power on those subjects, to the prejudice of the general welfare.

In the cases of *Rendering Co. v. Behr,* 7 Mo. App. 345, *Alkers v. San Francisco,* 32 Fed. Rep. 503, and *Louisville v. Wible,* 84 Ky. 290, the power of a city to make a contract with a person or corporation for the removal of dead animals, not slaughtered for food, from the city, and granting to such person or corporation the exclusive privilege of using the streets of the city for such purposes, was upheld as a proper police regulation. The cases of *Boehm v. Baltimore,* 61 Md. 259, and *Vandine,* 6 Pick. 187, merely uphold city ordinances requiring licenses and regulating the business of scavengers.

It will be observed that the ordinance under consideration authorizes the appointment of two or more persons as scavengers. It therefore places it in the power of the mayor to grant to two persons a monopoly of the scavengers' business within the limits of the city. While monopolies of any ordinary legitimate business are odious, we have seen that monopolies are upheld when deemed necessary in executing a duty incumbent on the city authorities or the legislature for the protection of the public health. It is sometimes a matter of great nicety and difficulty to determine whether a particular business or calling is in its nature so directly connected with the public welfare that the performance can only be safely intrusted to some one acting under public authority. So much of the business of the scavenger as consists in removing dead animals, it would seem, under the authorities, may properly

be regarded as a public function, for the discharge of which a monopoly may be created. But this ordinance goes further, and gives to the scavengers the exclusive privilege, also, of cleaning privy vaults and cesspools, and of removing garbage, not only from the streets, but from the private premises of the citizens. By its terms, it would prohibit the owners from performing these services for themselves, or from employing anyone else than the persons appointed. It not only makes a monopoly of the cleaning of vaults and cesspools which are necessarily offensive to the senses, but it also includes the removal of garbage. It would be somewhat difficult to say just what is included in the term "garbage." Webster defines it as "properly that which is purged or cleansed away; the bowels of an animal; refuse parts of flesh; offal; hence the refuse animal and vegetable matter from a kitchen." It will be observed that the monopoly under consideration is not one granted directly by the legislature, as in the case first cited, but by a city council claiming to act under legislative authority. Section 2 of the bill of rights in the constitution of this state reads as follows:

"SEC. 2. All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency."

This section of the bill of rights clearly prohibits the legislature from delegating the power to a city to grant to any individual the special privilege of carrying on any ordinary business or calling.

The eleventh subdivision of § 11 of the act concerning cities of the first class, above quoted, it will be observed, authorizes the city council to regulate or prohibit the construction of privy vaults and cesspools, and to regulate and enforce the cleaning of all places where offensive matter is permitted to accumulate. By the third subdivision of the same section,

the mayor and council are authorized to levy and collect license taxes on and regulate a great number of businesses and callings, including that of scavengers. In other parts of the same section, power is given to regulate and order the cleaning of chimneys, to regulate the storage of powder and other combustible and explosive substances, as well as to regulate many other things deemed by the lawmakers proper subjects of supervision by the city authorities.

The business of a scavenger may not be nice or attractive, but the removal of garbage and filth is a necessary work, which has been ordinarily performed through any agency the party interested might select. If the term "garbage" includes all refuse from the kitchen, then the waste, which ordinarily is used, when practicable, to feed swine, can only be removed from the premises by the person appointed under this ordinance. Privies and cesspools are not ordinarily deemed nuisances *per se.* They are not so regarded by the statute under consideration. They may be permitted or not by the city authorities, according as the circumstances and surroundings of the particular place or portion of the city render it more or less dangerous to the health of the inhabitants. When constructed, they are on private property, and in order to remove their contents, or to remove garbage not deposited in the streets or alleys, it would be necessary to enter private premises. We are not cited to any case holding that a monopoly of this business may be created.

In *Gregory v. City of New York,* 40 N. Y. 273, it was held that the board of health has not power to assume in advance that all the sinks and privies in the city of New York are or will become nuisances, or dangerous to the public health, and contract for the removal of their contents indefinitely until they or the common council order otherwise, and bind the defendant to pay for them. In the case of *Nicoulin v. Lowery,* 20 N. J. Law, 391, the defendant was charged with having in the nighttime carted, carried and taken into the township a load of night soil, in violation of an ordinance duly passed by the township committee. It was held that, in the absence of any

further showing, the act was not punishable, and in the opinion the court says:

"The scavenger, with the use of improved methods of protection, may use the public streets without injury or offense to others; and cautious as courts are in declaring an ordinance void as being unreasonable, they would hold this ordinance to be so when its penalties were sought to be enforced against anyone making a use of the public streets which was harmless in fact. The town cannot deny to citizens the use of its streets to cross the township on any business that is inoffensive. It cannot by merely declaring an act to be a nuisance make it such."

In *City of Richmond v. Dudley*, 29 Ind. 112, it was held:

"A city ordinance placing restrictions upon the keeping and storing of inflammable or explosive oils is invalid which fails to specify the rules and conditions to be observed in such business, and which does not admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions, but which does admit of the exercise of an arbitrary discrimination by the municipal authorities between citizens who will so comply."

In *In re Nash & McCracken*, 33 U. C. Q. B. 181, it was held that a by-law that "no person shall keep a slaughterhouse within the city without the special resolution of the council," was void, because it permitted favoritism, and might be used to grant a monopoly. In *Regina v. Johnston*, 38 U. C. Q. B. 549, it was held that a city by-law providing that no person other than chimney inspectors appointed by the municipal council (of whom there were to be three) should sweep, or cause to be swept, for hire or gain, any chimney or flue in the city, was beyond the power of the corporation, under the authority given to it to enforce the proper cleaning of chimneys, and a conviction under it was quashed. The case of *City of Richmond v. Dudley* and the one last cited are in principle much like the case under consideration, for the power of the city authorities to prevent fires is everywhere regarded as of prime importance, and admits no delay in their execution. (Horr & Bemis, Mun. Pol. Ord., § 221.)

The power of the city council to license and regulate the business of scavengers is not now questioned, nor in view of the express authority contained in the statute above quoted, can there be any question of their power to make and enforce all reasonable rules and regulations for the conduct of this disagreeable business. Under the authorities, and especially in view of the constitutional provision quoted, these regulations must leave a way open to every person who will comply with the requirements of the ordinance to engage, at least, in so much of the business of scavengers as relates to entering on private property and removing filth and garbage therefrom. This ordinance clearly authorizes the restriction of this business to two persons to be selected by the mayor, thereby providing for a monopoly. This the mayor and counsel had no power to do. The ordinance under consideration is therefore void, and the petitioner is discharged.