No. 20;135.

CHESTER O'NEAL and EDGAR BOMGARDNER, Partners, etc., *Appellants,* .v. W. H. HARRISON et al., *Appellees.*

### SYLLABUS BY THE COURT.

CITIES—*Removal of Garbage by City—City Ordinance Valid.* Under a statute giving it power to make regulations to secure the general health, to prevent and remove nuisances, and to compel and regulate the removal of garbage and filth beyond the corporate limits, a city may grant an exclusive right to the highest bidder to remove all garbage, the term being defined, in the ordinance authorizing the action, to mean "all rejected food, offal." *In re Lowe, Petitioner,* 54 Kan. 757, 39 Pac. 710, overruled.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed July 10, 1915. Reversed.

*A. C. Malloy,* of Hutchinson, for the appellants.

*C. M. Williams,* of Hutchinson, for appellees W. H. Harrison et al.

*Arthur L. Maltby,* of Hutchinson, for appellee J. A. Croomes.

The opinion of the court was delivered by

MASON, J.: The city of Hutchinson adopted an ordinance for the disposal of garbage, providing among other things that no person except one designated by the municipal authorities should remove it through the streets, and that a contract for its removal should be let to the highest responsible bidder. The persons who were awarded the contract brought an action to restrain others from engaging in the business. A demurrer to the petition was sustained, and the plaintiffs appeal.

The sole question presented is the validity of the ordinance. The defendants maintain that the city has no power to create a monopoly of the occupation of removing garbage, which the ordinance defines as "all rejected waste food, offal." They rely largely upon a decision of this court declaring that any regulation by the city of the business of scavengers "must leave a way open to every person who will comply with the requirements of the ordinance to engage, at least, in so much of the business of scavengers as relates to entering on private property and removing filth and garbage therefrom." (*In re*

*Lowe, Petitioner,* 54 Kan. 757, 766, 39 Pac. 710.)   One basis
of that decision was the view that the delegation by the legis-
lature of such power to a city is prohibited by the last clause of
section 2 of the bill of rights of the state constitution, which
reads:

"All political power is inherent in the people, and all free govern-
ments are founded on their authority, and are instituted for their equal
protection and benefit. No special privileges or immunities shall ever be
granted by the legislature, which may not be altered, revoked or repealed
by the same body; and this power shall be exercised by no other tribunal
or agency."

That clause had already, however, after careful considera-
tion, been construed as referring solely to political privileges,
and not to those relating to property rights.   (*Atchison Street
Rly. Co. v. Mo. Pac. Rly. Co.,* 31 Kan. 660, 3 Pac. 284.)   The
two decisions are not reconcilable, and we adhere to the inter-
pretation first placed upon the constitutional provision, which
has subsequently been approved, the reference to the bill of
rights in the Lowe case being characterized as inapt.   (*The
State v. Durein,* 70 Kan. 13, 19, 80 Pac. 987.)   The other view
would invalidate the statutes authorizing cities to grant various
franchises, and the state charter board to accept or reject ap-
plications for incorporation.

The decision in the Lowe case was also based upon the
theory that the ordinance was void because it attempted to
create a monopoly of a lawful calling and was in restraint of
trade.   There is some difference of judicial opinion on the
subject, but the decided weight of authority supports the right
of a municipality either itself to take over the conduct of a
business, the manner of operating which may affect the public
welfare, or to put it entirely in the hands of a single individual
or company.   (28 Cyc. 717; 20 A. & E. Encycl. of L. 867; 3
McQuillin on Municipal Corporations, § 914; Notes, 9 L. R. A.,
n. s., 1197; 21 L. R. A., n. s., 830; 4 Ann. Cas. 281; 19 Ann.
Cas. 1221; 50 L. Ed. 204.)   In one editorial note the Lowe
case is described as seeming to stand alone on the proposition.
(Note, 27 L. R. A. 540.)   In another it is said to be "hardly
supported by authority."   (Note, 97 Am. St. Rep. 691.)   In
a note to the text, the Lowe case is said to be the only decision
which has been found in opposition to the principles thus stated
in Dillon's Municipal Corporations:

"The *removal and disposal of garbage,* offal, and other refuse matter

O'Neal v. Harrison.

is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort, and safety. The natural scope of an ordinance on this subject is confined to *discarded and rejected matter, i. e.*, to such as is no longer of value to the owner for ordinary purposes of domestic consumption. If the matter in question has not been rejected or abandoned as worthless and is not offensive in any way to the public health, it does not come within the natural scope of such an ordinance. *Garbage matter and refuse* are regarded by the decisions as inherently of such a nature as to be either actual or potential nuisances. By reason of the inherent nature of the substance, it is therefore not a valid objection to an ordinance requiring disposal in a specified manner that garbage has some value for purposes of disposal, and that the effect of the ordinance is to deprive the owner or householder of such value. That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the State, and the loss sustained by the individual is presumed to be compensated in the common benefit secured to the public.

"Founded upon the foregoing considerations, it is therefore within the power of the city not only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it sees fit, *to assume the exclusive control* of the subject, and to provide that garbage and refuse matter shall only be removed by the officers of the city, or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly." (2 Dillon on Municipal Corporations, 5th ed., § 678.)

The present case might in some aspects be distinguished from a part of those cited in support of the majority doctrine, but after making due allowance for differences in decisions arising from differences in circumstances it is clear that the prevailing view favors the validity of such ordinances as that here involved. Inasmuch as the Lowe case was based, at least in part, on a misconception of the effect of a clause in the Kansas constitution, its force as an authority is greatly diminished. So far as concerns the question of an invasion of the provisions of the fourteenth amendment, the matter is practically set at rest by a decision of the federal supreme court. (*Reduction Company v. Sanitary Works*, 199 U. S. 306.)

The statute empowers the city—

"To make regulations to secure the general health of the city; to prevent and remove nuisances; . . . and prescribe and enforce regulations for . . . the cleaning and keeping in order of warehouses, stables, alleys, yards, private ways and grounds, outhouses, and

other places where offensive matter is kept or allowed to accumulate, and to compel and regulate the removal of garbage and filth beyond the city limits." (Gen. Stat. 1909, § 1278.)

The power so granted to adopt and enforce sanitary regulations is almost as broad as that of the state. It is conceded that the city may regulate the disposition of garbage, and impose rigorous rules as to the time and manner in which it shall be moved, because of the offensive and unwholesome odors arising from it. But it is argued that any one has a right, of which he can not lawfully be deprived, to haul it through the streets, so long as he conforms to the prescribed regulations—that the conferring of a monopoly in that respect is not necessary to enforce them, that it sustains no relation to their enforcement, and is not reasonably adapted to promote that end. But manifestly obedience to the rules laid down for the handling of garbage may be more easily compelled—the method adopted may be made more efficient—if it is all handled by one concern. In the special opinions in the *Slaughter-House Cases* (83 U. S. 36, 83; 111 U. S. 746, 754) it was vigorously argued that the establishment of a monopoly is not an appropriate step in promoting sanitation. The decisions to the contrary in those cases must be taken to settle the matter so far as the federal courts are concerned. In the Lowe case it was stated that a monopoly may be created for the discharge of the business of a scavenger so far as it consists in removing dead animals (54 Kan. 762), and this seems to be everywhere conceded. The principle being admitted or established that the creation of a monopoly is a device reasonably adapted to the enforcement of sanitary regulations, the question whether in a particular case it shall be employed is for the determination of the body charged with the control of such matters. Monopolies, or any restraints on trade, are against public policy, but this is a rule of the common law and does not tie the hands of the legislature. (*Slaughter-House Cases,* 83 U. S. 36, 65, 66.) Where that body has acted directly its selection of this method of attaining a desired result is not subject to judicial review. Where a city ordinance is involved the power of the courts is broader and not so clearly defined. The reasonableness of the course pursued, in view of all the circumstances, and the degree of inconvenience resulting to individuals, may be taken into account. But where as in this case the matter is one of great

O'Neal v. Harrison.

public importance, which the legislature has entrusted to the action of local authorities—no doubt wisely, because of the differences in local conditions—the action of the city commission becomes entitled to consideration almost equal to that accorded to a statute, and should not be interfered with except upon grounds the force of which is reasonably free from doubt. We conclude that authority and reason alike require the upholding of the present ordinance.

It will be noted that the exclusive contract under consideration is required to be let to the highest bidder, implying that there is a margin of profit in the business. This feature has been held to render void a similar ordinance, on the theory that it shows conclusively that revenue and not sanitation furnished the motive for its adoption. (*Dreyfus v. Boone*, 88 Ark. 353. 114 S. W. 718.) We can not regard the mere fact that the city derives some revenue from the measure as taking it out of the category of police regulations.

The defendants urge that the ordinance is prohibited by the statute forbidding the granting of contracts or franchises for the use of the streets, except under certain conditions. (Gen. Stat. 1909, § 1330.) We regard that statute, however, as referring only to the public utilities specifically named, or to those of a similar nature. The ordinance in question forbids the streets to be used for hauling garbage by any one not designated for the purpose by the city authorities, but it does not grant a right to use the streets, in the sense in which that phrase is employed in the statute. It forbids unauthorized persons to haul garbage on the streets, as a means to place that business in the control of a single concern.

The judgment is reversed and the cause remanded with directions to overrule the demurer to the petition.