LEON C. McKIM, PROSECUTOR, v. THE VILLAGE OF SOUTH ORANGE AND THE BOARD OF TRUSTEES OF THE VILLAGE OF SOUTH ORANGE, DEFENDANTS.

Argued October 2, 1945—Decided December 10, 1945.

Before Justices CASE, BODINE and PERSKIE.

For the prosecutor, *John J. Clancy.*

For the defendants, *Howard R. Cruse* and *Samuel Kaufman.*

The opinion of the court was delivered by

CASE, J.   The writ of *certiorari* brings up an ordinance of the Village of South Orange relating to the licensing and regulating of a public scavenger, together with matters incident thereto.   The ordinance makes it unlawful for anyone to collect or remove ashes, garbage or other refuse matter within the Village of South Orange without having procured a license from the board of trustees, and provides that not more than one license shall be issued and in effect at the same time.   It provides that the fees for the services shall be fixed from time to time by resolution of the board of trustees, but that the removal shall be without any liability on the part of the village.   Under the authority of the ordinance the trustees adopted a resolution fixing the scale of rates which the scavenger might charge the various property-users for the services of collecting and removing their garbage and ashes.  The trustees, by further resolution, licensed the South Orange Disposal Company, a corporation, to be the licensed scavenger for the period of one year at a license fee of one dollar to be paid to the village, the removal to be done according to the terms of the ordinance and at the rates fixed by the resolution.

We think that the ordinance is not a reasonable exercise of the municipal authority.   Our statutes recognize two methods of municipal disposal of ashes, garbage and other refuse.   It was said by Mr. Justice Trenchard for the Court of Errors and Appeals in *Eckert* v. *West Orange,* 90 *N. J. L.* 545, 548:

"It thus appears that the town council has authority to provide for the collection and disposal of rubbish and garbage in either of two ways, but not otherwise—first, it may provide for the doing of the work by the town itself. If it adopts this course, it must do so by ordinance, with all of the formalities necessary to enact a valid ordinance; second, it may make a contract with someone to do the work. But, where more than $500 is to be expended, it has no authority to make a valid contract until it has first publicly advertised for bids, and the contract can then be awarded only to the lowest responsible bidder."

The pertinent statutory citations which precede that statement are *Comp. Stat. p.* 5533, *plac.* 378; chapter 56, *Pamph. L.* 1914, and chapter 342, *Pamph. L.* 1912, legislation which is now substantially replaced by *R. S.* 40:66–1, *R. S.* 40:66–4 and *R. S.* 40:66–5. The governing body elected not to proceed in either of those statutory methods, which are (1) the operation of garbage collection and disposal directly by the municipality and (2) the contracting with a contractor after advertisement and bids. The statute permits the governing body in directly conducting the operation to provide for the doing of the work at the general expense or to fix the rate or rates to be charged *by the municipality.* The governing body here undertook to act under its municipal authority to license and regulate, but in a manner for which we find no justification in the statutes. *R. S.* 40:52–1 grants governing bodies the power to license and regulate certain occupations and businesses, *inter alia* scavengers; but the selecting of one representative of an occupation or craft to be licensed, in exclusion of all others of his kind, whereby the inhabitants of the municipality are obliged to employ him, and him only, to perform an essential function at a rate of compensation to be paid by them but fixed from time to time by the governing body is not, we think, within the reasonable exercise of that statutory licensing power. The compulsion proposed to be imposed upon a property-user is apparent in the remark made by the chairman of the scavenger committee of the board of trustees when he submitted the ordinance: "* * * if any person failed to contract with the licensed scavenger and

garbage accumulated on a property it would immediately become a matter for the Board of Health to bring action against the offender." The confused idea of a "contract" between the householder and the scavenger was prominent in the minds of the village trustees, as is further apparent in an excerpt from the report of the president of the village: "when licensed the scavenger will enter into individual contracts with residents for such service as they require on an approved schedule of prices." Every property-user does, of course, have some refuse which must be removed, and when it is recalled that no one, other than the licensed scavenger, may, under the ordinance, lawfully make the removal, and that he operates under a compensation schedule fixed by the governing body, it becomes clear that the relationship between the property-user and the scavenger is not one that may properly be called contractual.

The contention of the board is that it has inherent police power to legislate with respect to the health, welfare and safety of the community and that, therefore, it has the right to deal with refuse disposal by license; and those objectives are stated in the ordinance. Whatever rights the village may possess are subject to statutory limitations. The ordinance does not simply limit the privilege of collecting refuse to a single scavenger to be selected by the trustees (*Atlantic City* v. *Abbott,* 73 *N. J. L.* 281). It provides, as we have said, that the work shall be paid for by the householder to the scavenger at a price; such a price as the trustees shall fix. The work has been costing the municipality more than $75,000 per year; and the cost under the proposed method will be but little, if any, less than that. Certainly the aggregate of such moneys to be paid to and received by the scavenger will greatly exceed the sum of $1,000, which is the cost limit for contracting without public bidding, *R S.* 40:50–1 incorporated by reference in *R. S.* 40:66–4, *supra.* Obviously, the village could not contract directly for the doing of the work without calling for bids. The proposed method is, we think, in violation of a public policy, implicit in these and other statutes, that public work exceeding a limited sum shall not be awarded except upon advertisement and to the lowest responsible bid-

der. The evils attendant upon an award without open bidding are not less under license than under direct contract. Splitting the total cost among the property-users by a system that leaves to them no choice but to incur and pay the expense does not alter the fact that in essence an award of public work at a price of many thousands of dollars is being made to a private contractor without competition in bidding. Granted that refuse disposal has a direct bearing upon public health; the legislature has nevertheless declared the above mentioned public policy with respect thereto. If relaxation of that policy is desirable, it should be had from the legislature. Statutory limitations upon the procedure of municipalities, even in regard to refuse disposal, must be observed. *Townsend* v. *Atlantic City et al.,* 72 *N. J. L.* 474. There is no pressing emergency. The governing body has simply entered upon this course as a solution of the disposal problem.

The ordinance of the board and its actions thereunder will be set aside, with costs to the prosecutor.