33 N.J. Super. 294 (1954)
110 A.2d 131
MARANGI BROS., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THE BOARD OF COMMISSIONERS OF THE VILLAGE OF RIDGEWOOD, DEFENDANT-APPELLANT, AND FRANK CAPASSO AND GERALD F. CAPASSO, TRADING AS CAPASSO BROS., INTERVENERS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1954.
Decided December 6, 1954.
*296 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Peter Hofstra argued the cause for the respondent (Mr. Howard Stern, attorney).
*297 Mr. William E. Reinhardt argued the cause for the appellant.
Mr. Samuel A. Larner argued the cause for intervenors-appellants (Messrs. Budd and Larner, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
The Law Division declared invalid section 2 of an ordinance of the Village of Ridgewood under which, by instrument designated a "license agreement," the exclusive privilege of collecting and disposing of garbage and refuse was granted to a scavenger contractor, the appellants Frank Capasso and Gerald F. Capasso, trading as Capasso Bros. Both the village and the contractor appeal.
Section 2 provides:
"That the Board of Commissioners shall have the right to grant the exclusive privilege of removing and transporting said garbage, offal, decomposing solid, fluid substance, ashes, rubbish or waste upon competitive bidding. The term of such exclusive privilege shall be for not more than five years. An award of such exclusive privilege may be granted to the bidder, whose bid provides for the lowest rates for the removal of such garbage, offal, decomposing solid, fluid substances, ashes, rubbish or waste, provided such bidder shall show that he or it in all respects complies with the rules and regulations prepared by the Board of Health prior to the advertising for bids for the granting of such exclusive privilege. Such exclusive privilege shall not be granted to the successful bidder unless he shall furnish a bond satisfactory to the Board of Commissioners of the Village of Ridgewood in the sum of not less than $5,000, the condition of which shall be that he or it shall perform the services set forth in his or its bid for a sum not in excess of the amount quoted in such bid and that he or it shall comply with the rules and regulations of the Board of Health of the Village of Ridgewood, in connection with the removal of such garbage, offal, decomposing solid, fluid substance, ashes, rubbish or waste."
This section was engrafted on the original ordinance in 1934 and the village has operated under it since that time. For ten years prior to December 31, 1953 the plaintiff, Marangi Bros., Inc., was the low bidder and held the license agreement. For the current year Capasso Bros.' bid was lower and upon the furnishing of a $25,000 bond, as required by *298 the board of commissioners, they were awarded the exclusive privilege contract.
It is not suggested that the rules and regulations of the board of health or the specifications for the work to be performed were not prepared prior to the advertising for bids. Nor is it said that the public request for bids on rates to be charged to the various type users of the scavenger service was not properly or fairly made.
Plaintiff contends that such an ordinance provision is invalid under McKim v. Village of South Orange, 133 N.J.L. 470 (Sup. Ct. 1945). The trial court agreed that the case was controlling and added as a further ground for the invalidation that the use of the word "may" in the ordinance, in declaring that "an award of such exclusive privilege may be granted" to the bidder whose proposed rates are lowest, does not make it mandatory on the board of commissioners to recognize the lowest bidder.
In the McKim case it appeared that the Village of South Orange adopted an ordinance making it unlawful for any one to collect or remove garbage without having procured a license from the board of trustees, and providing that only one such license should be issued and in effect at a time. It provided also that the fees to be charged by the licensee to the users of the service were to be fixed by resolution of the board.
Pursuant to this authority, the board by resolution established the scale of rates to be charged and then licensed one contractor to collect the garbage within the village at rates fixed.
The Supreme Court held that the ordinance was not a reasonable exercise of the municipal authority and quoted with approval the following language of the Court of Errors and Appeals in Eckert v. Town of West Orange, 90 N.J.L. 545, 548 (1917), which was considered controlling:
"`It thus appears that the town council has authority to provide for the collection and disposal of rubbish and garbage in either of two ways, but not otherwise: First, it may provide for the doing of the work by the town itself. If it adopts this course, it must *299 do so by ordinance, with all the formalities necessary to enact a valid ordinance; Second, it may make a contract with some one to do the work. But, where more than $500 is to be expended (now $1,000; R.S. 40:66-4), it has no authority to make a valid contract until it has first publicly advertised for bids, and the contract can then be awarded only to the lowest responsible bidder.'" (Insertion ours.) (133 N.J.L., at page 472.)
After pointing out that the householder was not permitted to remove his own garbage and that an obligation was imposed upon him to employ the services of the licensee at rates fixed by the board, the court said:
"The work has been costing the municipality more than $75,000 per year; and the cost under the proposed method will be but little, if any, less than that. Certainly the aggregate of such moneys to be paid to and received by the scavenger will greatly exceed the sum of $1,000, which is the cost limit for contracting without public bidding, R.S. 40:50-1, incorporated by reference in R.S. 40:66-4, supra. Obviously, the village could not contract directly for the doing of the work without calling for bids. The proposed method is, we think, in violation of a public policy, implicit in these and other statutes, that public work exceeding a limited sum shall not be awarded except upon advertisement and to the lowest responsible bidder. The evils attendant upon an award without open bidding are not less under license than under direct contract. Splitting the total cost among the property-users by a system that leaves to them no choice but to incur and pay the expense does not alter the fact that in essence an award of public work at a price of many thousands of dollars is being made to a private contractor without competition in bidding." (Id., 133 N.J.L. at pages 473, 474.)
Subsequent to the decision in the McKim case, the Legislature passed a special statute relating alone to villages in counties of the first class (N.J.S.A. 40:162A-1). That statute is not relevant here as Ridgewood is not in such a county.
The contractor and the village in this case urge, and we agree, that the fundamental basis for striking down the South Orange measure was the absence of competitive bidding. And they contend that the Ridgewood requirement for such bidding justifies judicial approval of its ordinance.
More specifically, appellants say that the municipal authority should be sustained on either one or the other or both of *300 two grounds: First, under the express statutory power given to municipalities to enact ordinances to license and regulate "scavengers" (N.J.S.A. 40:52-1(c)), which power was not specifically in existence when the Eckert case was instituted. The statute became effective on March 27, 1917 (L. 1917, p. 463), which was prior to the filing of the opinion, but apparently it was not considered by the court. And secondly, under N.J.S.A. 40:66-4 which permits the governing body to make a contract for the collection and disposal of garbage with any person if the specifications for the doing of the work in a sanitary and inoffensive manner are first adopted and if bids have been advertised for whenever the amount of the contract exceeds $1,000.
There can be no doubt that the collection and disposal of garbage are so intimately associated with the public health that stringent control thereof is indispensable. And as the Appellate Division pointed out in Township of Dover v. Witt, 7 N.J. Super. 259 (App. Div. 1950), the Legislature, recognizing the need by enactments such as R.S. 40:66-1, granted ample power to the municipal governing bodies to accomplish this control. See also R.S. 40:48-2; N.J.S.A. 40:52-1(c); Annotations: 15 A.L.R. 289; 72 A.L.R. 521; 135 A.L.R. 1306; McQuillin, Municipal Corporations (3d ed. 1949), § 24.242 et seq.
Ordinances regulating the disposition of garbage are entitled to the presumption of validity which generally attends municipal enactments; and they should be sustained, if not in conflict with any applicable statute or legislative policy, when they bear a reasonable relation to the end to be accomplished, namely, the safeguarding of the public health, and when the method prescribed of meeting the problem is reasonably designed to serve that end. Township of Dover v. Witt, supra; Atlantic City v. Abbott, 73 N.J.L. 281 (Sup. Ct. 1906).
As indicated above, appellants argue first that the ordinance is authorized under the statutory power to license and regulate scavengers conferred by N.J.S.A. 40:52-1 (c). This statute is part of the Municipalities or Home Rule Act *301 which was promulgated in 1917. L. 1917, c. 152, Art. XV, § 1, p. 358. In effect, the contention is that implicit in the authority to license and to regulate is the power to limit the number of licenses, if the public good justifies such limitation.
In considering municipal measures designed to deal with problems of public health, under R.S. 40:48-2, N.J.S.A. 40:52-1(c) and R.S. 40:66-1, regard must be had for the presumptive validity already mentioned; also for the doctrine that the governing body is entitled to wide latitude in its efforts at regulation and that the enactment finally issued should not be disturbed unless palpably unreasonable or in conflict with some superior statutory or constitutional limitation. Township of Dover v. Witt, supra. And even more specifically here, in applying the various sections of the Home Rule Act, we must be mindful that the Legislature has directed a most liberal construction policy. For R.S. 40:42-4 says:
"In construing the provisions of this subtitle, all courts shall construe the same most favorably to municipalities, it being the intention to give all municipalities to which this subtitle applies the fullest and most complete powers possible over the internal affairs of such municipalities for local self-government."
Nor can we lose sight of the mandate in the 1947 Constitution, Art. IV, § VII, par. 11, for liberal construction of legislation concerning municipal powers.
The great weight of authority in other jurisdictions is to the effect that considerations of public health provide sufficient justification for the granting of an exclusive license to a scavenger to collect garbage within its borders. Annotations: 15 A.L.R. 293; 72 A.L.R. 523; 135 A.L.R. 1309; McQuillin, Municipal Corporations, § 24.251; Dillon, Municipal Corporations (5th ed. 1911), § 678. However, as a study of the annotations and texts will disclose, the cases establishing this doctrine do not deal with the precise issue presented in this cause, that is, the propriety of granting such a license where the cost of handling the garbage is assumed by the municipality or imposed upon the householder and where a statutory mandate exists requiring *302 competitive bidding for public contracts and the award thereof to the lowest responsible bidder. Apparently in most cases the contractor considered the salvage value of the garbage sufficient reward to warrant his assumption of the task of collection without compensation. Apparently this was the situation in the New Jersey case of Atlantic City v. Abbott, supra, 73 N.J.L. 281 (Sup. Ct. 1906), where an exclusive collection contract was sustained.
Occasionally, references appear to some form of competitive bidding, Gurtz v. City of San Bruno, 8 Cal. App.2d 399, 48 P.2d 142 (Dist. Ct. App. 1935); City of Bowling Green v. Davis, 313 Ky. 203, 230 S.W.2d 909 (Ct. App. 1950); O'Neal v. Harrison, 96 Kan. 339, 150 P. 551, L.R.A. 1915 F, 1069 (Sup. Ct. 1915); City of Butler v. Nuth, 361 Pa. 484, 65 A.2d 687 (Sup. Ct. 1949), although it was not a factor in the case. Even where competitive bidding was required in connection with the letting of contracts for public work, an agreement granting an exclusive license to collect garbage was held not to be such a public contract because of the health problem involved. Ponti v. Burastero, 112 Cal. App.2d 846, 247 P.2d 597 (Dist. Ct. App. 1952); Harper v. Richardson, 222 Mo. App. 331, 297 S.W. 141 (Kans. City Ct. App. 1927).
Moreover, in other jurisdictions it does not seem to have made any difference whether the householder paid for the service at rates fixed in the ordinance (Harper v. Richardson, supra); or after competitive bidding (City of Butler v. Nuth, supra); or after action by the governing body pursuant to the ordinance which required the fixing of fair and reasonable rates to be paid by the users of the service (City of Bowling Green v. Davis, supra); or simply at charges fixed by the contractor (California Reduction Co. v. Sanitary Reduction Works, 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204 (1905)), or where the municipality paid substantial sums yearly to the exclusive licensee, apparently no competitive bidding being required (Gardner v. People of State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212 (1905)), or where after competitive bidding for the exclusive privilege *303 the municipality was paid therefor and no charge was made to the householder (O'Neal v. Harrison, supra).
An excellent summation of the principles involved in the problem appears in Dillon, Municipal Corporations, supra:
"The removal and disposal of garbage, offal and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort and safety.

* * * * * * * *
That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the state, and the loss sustained by an individual is presumed to be compensated in the common benefit secured by the public.

* * * * * * * *
Founded upon the foregoing considerations, it is therefore within the power of the city not only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it sees fit, to assume the exclusive control of the subject, and to provide that garbage and refuse matter shall only be removed by the officers of the city, or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly."
These authorities show the generally favorable temper of the law toward exclusive scavenger licenses as a reasonable exercise of police power, and with them in mind we return to a consideration of the McKim case. The impression to be gathered from the opinion of the Supreme Court is that the basic vice of the South Orange ordinance resided in the absence of competitive bidding. Such bidding is sacrosanct in New Jersey, designed as it is to secure economy in government, avoid favoritism and corruption and protect the lowest responsible bidder. Shore Gas & Oil Co. v. Spring Lake Borough, 27 N.J. Super. 33 (App. Div. 1953).
In the present matter the vice does not exist. The ordinance makes provision for open competitive bidding after public advertisement of the board of health regulations and the specifications of the nature of the work. In addition, these specifications, which are attached to and made part of the license agreement, set out the various classifications of *304 users of the service for which competitive bids for rates to be charged are sought. It is not suggested in this proceeding that those classifications are arbitrary or unreasonable.
The plaintiff argues that under the McKim pronouncement the fact that the property owners and householders have no say in the establishment of the charges and are prohibited from transporting, or engaging another to transport, their garbage through the public streets (under section 1 thereof) condemns the ordinance. In our judgment, the reference of the Supreme Court to that phase of the situation was incidental to the discussion of the pivotal question of absence of competitive bidding and was not intended to be, of itself, a ground for the adverse decision.
The users of the scavenger service in the Village of Ridgewood are represented by the board of commissioners, their elected officials. These officials in the exercise of their legislative discretion have adopted the system of exclusive license after competitive bidding on the charges to be made for the service, and the ordinance resulting therefrom, as already stated, should not be rejected unless palpably unreasonable. In our judgment, the method established of handling the garbage problem, including the limitation of the scavenger licenses to one, represents a fair and reasonable exercise of the licensing and police power, and the ordinary right of the individual householder to negotiate his own independent contract with a third person for such service or to transport his own garbage to a place of disposal, must defer to the common advantage which arises from the ordinance. Cf. City of Indianapolis v. Ryan, 212 Ind. 447, 7 N.E.2d 974 (Sup. Ct. 1937); Harper v. Richardson, supra.
In Atlantic City v. Abbott, supra, 73 N.J.L. 281 (Sup. Ct. 1906), where a single license was granted and the ordinance prohibited the use of the city streets for collection or transportation of garbage by anyone but the licensee, the Supreme Court said:
"The disposition of garbage is a matter of prime importance to the public health, and justifies careful inspection and regulation on the part of the public authorities, in order to secure its prompt removal *305 and disposition at seasonable hours, and under such conditions that the danger of scattering offensive matter in the streets may be reduced to a minimum. These objects can be more readily secured if the matter is under the exclusive control of the city. The time and frequency of collection, the method of conveyance, and the method and place of final disposition of the refuse, are all important, and proper control can only be secured by close and careful inspection, which becomes more and more difficult as the number of places and persons to be watched increases. It is not sufficient that the method of collecting and carting should be harmless, and involve no menace to health by the use of the streets. It is necessary, also, that the refuse should be finally disposed of in such a way that the public authorities may be assured that it will be innocuous. To accomplish that purpose, they may adopt any reasonable plan of disposition, provided they act in good faith for the protection of the public health, and not in an arbitrary manner. We see no reason in the present case to doubt that the ordinance was passed in good faith, and, although it creates an exclusive right, we cannot say that this is not the result of an attempt to safeguard the public health by means which are reasonable and bear a real and substantial relation to the end to be accomplished  the final disposition of the refuse matter." (73 N.J.L. at pages 282, 283.)
In a similar case of exclusive grant, O'Neal v. Harrison, supra, where it was argued that one cannot be deprived of the right to haul garbage through the streets so long as he conforms to the regulations, the Supreme Court of Kansas declared:
"* * * But manifestly obedience to the rules laid down for the handling of garbage may be more easily compelled  the method adopted may be made more efficient  if it is all handled by one concern. * * * The reasonableness of the course pursued in view of all the circumstances, and the degree of inconvenience resulting to individuals, may be taken into account. But where, as in this case, the matter is one of great public importance, which the Legislature has intrusted to the action of local authorities  no doubt wisely, because of the differences in local conditions  the action of the city commission becomes entitled to consideration almost equal to that accorded to a statute, and should not be interfered with except upon grounds the force of which is reasonably free from doubt. * * *" (150 P. at page 552).
We do not regard the requirement that the users of the service must pay the fees fixed in the licensing agreement as a bar to the validity of the ordinance. They were fixed by competitive bidding, which is a fair, well known and widely *306 used method for securing low and equitable prices. The public health problem involved justifies the imposition of those charges upon the users of the service as well as the subordination of the individual right to contract independently for the service.
It may be noted that use of the scavenger is not ordered. In fact we were told at the oral argument that 600 householders do not take advantage of the service. This may result from installation of disposal units (if permitted), or perhaps from the burning or other disposition of the garbage on the premises, not inconsistent with the local health regulations. Moreover, where the governing body contracts directly with a scavenger, the sum agreed to be paid for the service goes into the budget and is represented in the tax rate to which the property owners are subject. Thus a property owner who does not use the scavenger at all participates in the payment of the burden assumed by the municipality on the basis of his tax assessment just the same as one who does use the service. Under the license system such a property owner would have no financial obligation.
There would appear to be no essential difference between this system for payment and one which required the householder or hotel or restaurant keeper to turn his garbage over to a single municipally licensed contractor even though it had some sale value (Atlantic City v. Abbott, supra), or one which required the transportation and delivery of such garbage at the citizen's expense to an incinerator operated by an exclusively licensed contractor (California Reduction Co. v. Sanitary Reduction Works, supra).
In the latter case, answering the contention that the requirement of the ordinance amounted to an unconstitutional deprivation of property, Justice Harlan, speaking for the Supreme Court of the United States, pointed out that no one has an absolute right to be wholly free from all restraint under all circumstances and that persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort and health of the community. These restraints are validly imposed so long as they do not *307 interfere with the individual rights beyond the reasonable necessities of the case. And he said further:
"The defendants insist that the requirement that the substances mentioned should be delivered at the plaintiff's works for cremation or destruction, at the expense of the person, company, or corporation conveying the same, was a taking of private property for public use without compensation. We cannot assent to this view. It is the duty, primarily, of a person on whose premises are garbage and refuse material, to see to it, by proper diligence, that no nuisance arises therefrom which endangers the public health. The householder may be compelled to submit even to an inspection of his premises, at his own expense, and forbidden to keep them, or allow them to be kept, in such condition as to create disease. He may, therefore, have been required, at his own expense, to make, from time to time, such disposition of obnoxious substances originating on premises occupied by him as would be necessary in order to guard the public health. If the householder himself removed them from his premises, it must have been at his own expense; and the scavenger who took to the crematory the material from the premises of origin, under some arrangement with the householder, was, in effect, the representative, in that matter, of the householder, and was performing a duty resting upon the householder. So that if the requirement that the person conveying the material should pay a given price for having it cremated or destroyed, in effect put some expense on the householder, that gave him no ground for complaint; for it was his duty to see to the removal of garbage and house refuse having its origin on his premises." (199 U.S. at pages 321, 322, 26 S.Ct. at page 104.)
Under all of the circumstances, we are of the opinion that the ordinance in question represents a valid exercise of the municipal power to license and regulate scavengers and that it was error to hold otherwise.
Turning to the second theory advanced by appellants, we take the view that the ordinance and the "license agreement" which came into being as the result of the system established thereby are justifiable under the power to contract with any person or firm for the collection of garbage.
R.S. 40:50-1 and N.J.S.A. 40:66-4 together make plain that a municipality may enter into a contract for the collection of garbage, providing its execution is preceded by public advertising for bids where the sum to be expended exceeds $1,000.
*308 Undoubtedly, it was thought originally that the mandate for bids applied only where public moneys were to be expended. However, the McKim case applied the rule to scavenger license cases where no such moneys were to be disbursed, and that ruling must be regarded as the law. Ridgewood met the requirement here and so consideration of whether the exclusive "license agreement" constitutes a contract within the contemplation of N.J.S.A. 40:66-4 is justified.
It will be observed that no particular contractual technique is commanded by the statute. Although it seems likely that the conventional agreement which calls for the expenditure of a certain amount of municipal funds was primarily in the legislative mind, there is no indication that such type was intended or provided for to the exclusion of any other.
The license granted to Capasso Bros. partakes of the character of both license and contract and as already noted is designated as such. It recites that in consideration of the furnishing of the $25,000 bond, compliance with the specifications, which are made a part of the compact, and the rendering of the service at the rates specified, the license is issued. The contract theory would have been less open to question if either the license agreement or the specifications contained an express commitment on the part of the contractor to perform the service for the term of one year. However, since the specifications seek bids for the period from January 1, 1954 to December 31, 1954, the plain implication is that the licensee agrees to perform throughout that time. All of these factors impel the conclusion that a contract exists within the ambit of the statute referred to.
Therefore, even if the licensing statute were not applicable in support of the ordinance, it is our view that the requirements for public contract expounded by the McKim and Eckert cases have been complied with fully.
Accordingly, we conclude that the ordinance has the sanction of R.S. 40:50-1 and N.J.S.A. 40:66-4.
Finally we come to the legal significance of the word "may" in the section of the ordinance under attack. The *309 particular language is that "an award of such exclusive privilege may be granted to the bidder, whose bid provides for the lowest rates" etc. We have no doubt about this. It simply means that if the board of commissioners decides to proceed by advertisement for bids, on charges to be paid by the users of the scavenger service, a license may be granted to the lowest responsible bidder but only to that bidder; the use is in the mandatory sense of "must."
For the reasons stated the judgment is reversed.