125 N.J. Super. 535 (1973)
312 A.2d 162
LEIMPETER'S DISPOSAL SERVICE, INC., A NEW JERSEY CORPORATION; AND JOHN F. LEIMPETER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF CARTERET; AND THE BOROUGH OF CARTERET, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1973.
Decided November 26, 1973.
*537 Before Judges CARTON, SEIDMAN and GOLDMANN.
Mr. Peter J. Selesky argued the cause for appellants (Messrs. Selesky, Kolsky & Epstein, attorneys).
Mr. Joseph P. Schiappa argued the cause for respondents (Mr. Edward J. Dolan, attorneys; Mr. Sam Weiss, of counsel).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Plaintiff Leimpeter's Disposal Service, Inc., a licensed solid waste collector whose place of business is located in the Borough of Carteret, and whose principal stockholder is plaintiff John F. Leimpeter (collectively referred to herein as "plaintiff"), filed a complaint in lieu of prerogative writs challenging the validity of an ordinance adopted by the governing body of the Borough of Carteret prohibiting private scavengers from dumping or disposing of industrial or commercial refuse on the borough's waste disposal area. In addition, damages were sought because of plaintiff's inability to use the waste disposal area.
Defendant borough counterclaimed for damage to the area allegedly caused by plaintiff and also to recover moneys claimed to be owed by plaintiff for the use of the area between 1969 and 1971.
After a hearing the trial judge upheld the ordinance, dismissed plaintiffs' claim for damages, and awarded the borough $6340[1] for plaintiffs' use of the disposal area. 121 *538 N.J. Super. 18 (Law Div. 1972). Plaintiff appeals, contending that (1) the ordinance regulating scavengers does not bear a substantial relation to the public health, safety and welfare; (2) it has standing to raise the constitutional rights of its customers "who are fellow taxpayers in Carteret," and (3) defendant failed to sustain its burden of proof with respect to the counterclaim.
The last point urged is without merit. Prior to the adoption of the ordinance under review, the municipality issued permits for the use of its disposal area and charged fees for the depositing of refuse and other materials in accordance with an established schedule. Defendant claimed, from its records, that plaintiff owed $6340 for the use of the facility between July 1969 and September 1971. Plaintiff did not deny receiving bills in that amount, but disputed their accuracy. The trial judge found for defendant on the counterclaim, noting that plaintiff had presented nothing to support its contentions. Considering the proofs as a whole, we are satisfied that the result could reasonably have been reached on sufficient credible evidence present in the record and, therefore, should not be disturbed. State v. Johnson, 42 N.J. 146, 162 (1964); Close v. Kordulak Bros., 44 N.J. 589, 598-599 (1965).
Plaintiff apparently does not question the dismissal of its claim for damages. In any event, as the trial judge correctly pointed out, a cause of action against a municipality cannot be grounded on the alleged invalidity of an official legislative determination. Visidor Corp. v. Cliffside Park, 48 N.J. 214, 222 (1966); Veling v. Ramsey, 94 N.J. Super. 459, 461 (App. Div. 1967).
We turn now to the ordinance in question. The proofs disclose that in 1969 the Borough of Carteret created a municipal disposal area. In September 1971 the "Garbage and Trash Disposal" chapter of the municipality's Revised General Ordinances was amended to prohibit, as had an earlier *539 ordinance, the depositing of refuse not originating in the borough, and by the addition of the following section:
No person or party engaged in the act, business or practice of a private scavenger, or transporter and disposer of garbage, refuse, trash or wastes, of any nature whatsoever having its origin in any commercial, mercantile, business or industrial operation or establishment situated in the Borough of Carteret, shall dump or dispose of same upon any Borough of Carteret owned or operated municipal ground or refuse disposal area or landfill site.
Plaintiff claims that the above amendment is unconstitutional. It argues, in substance, that (1) it regulates business and singles out only those engaged in the lawful pursuit of solid waste removal; (2) government may not, in the guise of protecting the public, arbitrarily interfere with or impose unreasonable restrictions upon business; (3) there is no rational basis for excluding licensed solid waste collectors, and (4) the classification of private scavengers does not bear a reasonable relation to the general object of the legislation and constitutes arbitrary discrimination.
The argument that the ordinance regulates business is unsound. It does not do so at all. What it does, in addition to excluding refuse and waste from outside the borough, is to prohibit private scavengers from using the municipal disposal area for the dumping of solid waste from commercial, business and industrial operations located in the borough. The collection and dumping of refuse from residences in the borough is not affected.
There is no doubt that municipalities are empowered to legislate on the removal and disposal of waste in order to promote the public health, Dover Tp. v. Witt, 7 N.J. Super. 259, 261 (App. Div. 1950), and ordinances which regulate the disposition of garbage are entitled to the presumption of validity generally attending municipal enactments. Marangi Bros. v. Bd. of Com'rs, Ridgewood, 33 N.J. Super. 294, 300 (App. Div. 1954). Those attacking such ordinances have the *540 burden of establishing their unreasonableness. Gilman v. Newark, 73 N.J. Super. 562, 582 (Law Div. 1962).
Since ordinances such as the one involved herein will be sustained whenever they bear a reasonable relation to the safeguarding of public health, Marangi Bros. v. Bd. of Com'rs, Ridgewood, supra, the issue to be resolved is whether, on the facts here present, the ordinance in question is a reasonable exercise of municipal police power.
In his opinion the trial judge referred to the testimony of municipal officials that the amendment was adopted to protect the public health by preventing the depositing of waste of non-Carteret origin, and that under the former ordinance the borough had found it impossible to detect the origin of solid waste, especially that collected by private scavengers who have customers in various municipalities. He noted, further, that when the disposal area was ordered closed in May 1971 by the State Department of Environmental Protection for violations of the State Sanitary Code, remedial steps were taken by the borough.
To remove the disposal area from the jurisdiction of the Public Utilities Commission, the borough ceased to operate the facility as a proprietary enterprise; large sums were spent to upgrade it and its use was denied to private solid waste collectors, thus, according to the trial judge, "significantly diminish[ing] the quantity of waste entering the disposal area, thereby making it less burdensome to maintain the site in a sanitary fashion."
The trial judge reasoned that since the borough had a valid interest in promoting good health by excluding non-Carteret waste, the barring of private scavengers was not an unreasonable method of effecting that end.
Unquestionably, the municipal disposal area had been in a deplorable condition, hazardous to the public health and welfare. The cause, however, seems to have been the borough's failure to supervise effectively those using it. The fact that the amendment "significantly diminished" the *541 amount of waste entering the disposal area, thus making it easier to maintain it in a sanitary fashion is, at best, a tenuous point. Solid waste had been deposited not only by private scavengers but also by others, including the municipality's own sanitation department. The proofs do not support the conclusion that private scavengers were chiefly responsible for the conditions which had prevailed, and their exclusion cannot be justified on that basis.
In any event, the primary motive for the legislative action taken by the municipality, as disclosed by the record, was a genuine concern on its part that the facility would soon be taxed beyond its capacity if the use thereof continued in an unrestricted fashion. It was deemed necessary to limit the disposal area to solid waste originating in the borough. As a consequence, the depositing of waste and refuse from outside the borough was banned.
The propriety of such action is not disputed. A municipality may legally bar the dumping of foreign waste and refuse. Public Health Council v. Franklin Tp. Bd. of Health, 108 N.J. Super. 239, 241 (App. Div. 1970).
An attempt is made to justify the amendatory ordinance under review by relating it to the legitimate policy of excluding solid waste emanating from other municipalities. The argument advanced is that since it is difficult, if not impossible, to detect the origin of waste hauled by private scavengers who also do business elsewhere, placing them in a separate category for the purposes of the ordinance is a reasonable and valid classification and excluding them entirely (except for refuse from borough residences) is a proper exercise of police power in the circumstances.
We do not find the explanation persuasive insofar as it applies to a private scavenger like plaintiff, whose place of business is in the borough. We recognize the possibility that enforcement of the ordinance might be difficult in the case of private scavengers based elsewhere, since, as noted before, the waste being transported could conceivably originate at *542 least in part in another municipality and then be deposited in the disposal area without detection. However, we need not determine at this time what the result should be with respect to those solid waste collectors.
As for Carteret-based scavengers, even though their activities may extend to other municipalities, the borough has not convincingly demonstrated its inability to control them through appropriate means. Moreover, there is nothing in the record to suggest that violations of the ordinance are reasonably to be anticipated. On balance, therefore, viewing the facts and circumstances in their totality, we do not think the hypothetical possibility that some outside refuse might possibly be brought into the municipality is sufficient justification for preventing plaintiff from engaging in the pursuit of an otherwise lawful business.
Additionally, in considering the reasonableness of the ordinance we should not ignore its effect upon those local businesses and industries that have relied upon plaintiff and other private scavengers for the disposal of their solid waste. As taxpayers they ought to have the same access to the waste disposal area as anyone else in the borough.
Although their refuse is not excluded from the disposal area, it cannot be hauled there by private scavengers. Thus, those engaged in business or industry are faced with the choice of either having to transport the solid waste to the disposal area themselves or having it carried by private scavengers to dumps outside the borough at presumably greater expense.
On the facts here present, we perceive no reasonable basis for applying the amendatory ordinance to private scavengers like plaintiff whose businesses are located in Carteret. It is our view, as to them, that the ordinance in question is unreasonable and arbitrary and cannot be enforced.
So much of the judgment which dismisses the complaint is reversed and the case is remanded to the Law Division for the entry of judgment in conformance with this opinion. The remainder of the judgment is affirmed.
NOTES
[1] The judgment that was entered is for $6000, plus interest and costs. The difference in the amounts is not explained.