## FRANK G. ECKERT, APPELLANT, v. TOWN OF WEST ORANGE, RESPONDENT.

### Submitted March 26, 1917—Decided June 18, 1917.

1. A town has the authority to provide for the collection and disposal of ashes and garbage in either of two ways, but not otherwise—first, it may provide for the doing of the work by the town itself. If it adopts this course, it must do so by ordinance, with all of the formalities necessary to enact a valid ordinance; second, it may make a contract with some one to do the work. But where more than $500 is to be expended, it has no authority to make a valid contract until it has first publicly advertised for bids, and the contract can then be awarded only to the lowest responsible bidder.

2. Where a town has contracted for the removal of ashes and garbage involving an expenditure of more than $500, without complying with the provisions of chapter 342 of the laws of 1912 (*Pamph. L., p.* 593) requiring advertisement for bids and award to the lowest responsible bidder, there can be no recovery on a *quantum meruit* for services rendered under such *ultra vires* contract after the service upon the contractor of the writ of *certiorari* sued out to review the validity of the contract.

3. The law will not permit a recovery on a *quantum meruit* in a suit against a municipality where an express contract would be *ultra vires* because in violation of chapter 342 of the laws of 1912. *Pamph. L., p.* 593.

On appeal from the Essex County Circuit Court.

For the appellant, *Arthur B. Seymour.*

For the respondent, *Borden D. Whiting* and *Ira C. Moore, Jr.*

The opinion of the court was delivered by

TRENCHARD, J. This is an appeal from a judgment of the Essex County Circuit Court in favor of the defendant in an action brought to recover compensation for collecting and disposing of ashes and garbage in the town of West Orange. The material facts are as follows:

The town council of the town of West Orange passed an ordinance purporting to create the office of town scavenger. This ordinance provided that this so-called officer should collect all ashes and garbage and dispose of the same at a place to be provided by himself. His salary, by an amendment passed May 5th, 1914, was fixed at the rate of $469.50 a month. This was intended not only to compensate him for his services in supervising the work, but also to reimburse him for his necessary expenses, such as hiring men and providing wagons. Eckert, the plaintiff, was appointed town scavenger under this ordinance.

On July 20th, 1914, a writ of *certiorari* was allowed attacking the ordinance and the appointment of Eckert thereunder and the writ was served upon Eckert July 23d, 1914. One of the grounds of attack was that it violated chapter 342 of the

laws of 1912 (*Pamph. L., p.* 593) which requires that where an expenditure of more than $500 is to be incurred for labor, materials, &c., the town council must first publicly advertise for bids and award the contract to the lowest responsible bidder. On August 14th, 1914, the Supreme Court rendered judgment setting aside the ordinance and appointment of all proceedings thereunder. Briefly, the basis of the decision was that the person appointed under an ordinance of this character was not an officer of the town and the services were such as should be regulated by contract.

The plaintiff continued to act as scavenger until September 15th, 1914, thereby serving after service of the writ of *certiorari* upon him, and even after entry of the judgment setting aside the ordinance and his appointment. He was paid in full up to July 31st, 1914, which was one week after the writ of *certiorari* was served upon him. He has not been paid for the work done from August 1st, 1914, to September 15th, 1914. It is to recover compensation for work performed by him during this period that this suit was brought.

We are of the opinion that the judgment for the defendant was right.

The contention that, even though the contract was set aside as illegal, the plaintiff is, nevertheless, entitled to recover on a *quantum meruit,* is not well founded in law.

A municipality is under no legal obligation to take charge of the rubbish or garbage which accumulates upon the properties of the inhabitants thereof. It has authority to do so, however, by virtue of the following acts of the legislature:

A supplement to the Town act of 1895 (*Comp. Stat., p.* 5533, ¶ 378) provides that "the council shall have power by ordinance to provide for the collection, removal, treatment and disposal of ashes and garbage, and to appropriate and provide for raising money by taxation for the said purposes, or any or either of them."

The Town act of 1895, as amended by *Pamph. L.* 1906, *p.* 324, provides: "No ordinance or by-law shall be passed by the town council unless the same shall have been introduced at a previous stated meeting, and shall be agreed to by a

majority of the members of the council; and no ordinance shall take effect until five days after it shall have been published in the official newspapers of the town, and if there be none, in at least one newspaper published in the county and circulating in the town * * *."

Chapter 56 of the laws of 1914 (*Pamph. L., p.* 91) provides as follows: "It shall be lawful for the governing body of any incorporated town of this state to enter into and make a contract or contracts, not exceeding the term of five years at a time, with any corporation or individual for the collection and removal of ashes and rubbish, and for the collection, removal and disposal of garbage."

Chapter 342 of the laws of 1912 (*Pamph. L., p.* 593) provides as follows: "Where and whenever hereafter it shall be lawful and desirable for a public body in any county, city, town, township, borough or village to let contracts or agreements for the doing of any work or for the furnishing of any materials or labor, where the sum to be expended exceeds the sum of five hundred dollars, the action of any such public body entering into such agreement or contract, or giving any order for the doing of any work or for furnishing of any materials or labor, or for any such expenditures, shall be invalid unless such public body shall first publicly advertise for bids therefor, and shall award said contract for the doing of said work or the furnishing of such materials or labor to the lowest responsible bidder; *provided, however,* that said public body may, nevertheless, reject any and all bids."

It thus appears that the town council has authority to provide for the collection and disposal of rubbish and garbage in either of two ways, but not otherwise—first, it may provide for the doing of the work by the town itself. If it adopts this course, it must do so by ordinance, with all of the formalities necessary to enact a valid ordinance; second, it may make a contract with someone to do the work. But, where more than $500 is to be expended, it has no authority to make a valid contract until it has first publicly advertised for bids, and the contract can then be awarded only to the lowest responsible bidder.

The sections of the Town act, and the acts of 1914 and 1912, above quoted, should be read together in the same manner as this court in *Townsend* v. *Atlantic City, 72 N. J. L.* 474, decided that the act under which Atlantic City was organized (*Pamph. L.* 1902, *p.* 284), and the Garbage act (*Pamph. L.* 1902, *p.* 200), should be read together. The town, therefore, had no power to make the contract in question with the plaintiff without complying substantially with the provisions of the act of 1912, and that, admittedly, it did not do.

Where, as in this case, a town has contracted for the removal of ashes and garbage involving an expenditure of more than $500, without complying with the provisions of chapter 342 of the laws of 1912 (*Pamph. L., p.* 593), requiring advertisement for bids and award to the lowest responsible bidder, there can be no recovery on a *quantum meruit* for services rendered under such *ultra vires* contract after the service upon the contractor of the writ of *certiorari* to review the validity of the contract.

This case is different from a suit against a private corporation on a claim arising out of an *ultra vires* contract. The defendant in this case is a municipal corporation. The contract out of which the plaintiff's claim arises is *ultra vires,* not because of the provisions of some private charter, but because it violates the public policy of the state.

The legislature by the act of 1912 provided that all public contracts involving the expenditure of more than $500, must be publicly advertised and awarded to the lowest bidder. The purpose and importance of this act is too obvious to require comment. The plaintiff is now asking that a contract be implied which this law expressly declares shall be invalid. His claim is for more than $500. It is for services performed after the granting and service of a writ of *certiorari* to review his express contract with the town, and in large part performed after the Supreme Court had set aside his express contract as illegal. If he can recover on a *quantum meruit* for these services, it would seem that there would be nothing to prevent a town council so disposed from permitting him to

continue indefinitely to act as town scavenger without any express contract and thus evade the provisions of the act of 1912 entirely.

Moreover, the law will not permit recovery on a *quantum meruit* in a suit against a municipality where an express contract would be *ultra vires.* Recovery has frequently been allowed on a *quantum meruit,* where there has been some unimportant irregularity in the proceedings, or an innocent mistake as to some matter of fact. But the law will not raise an implied promise which would, as in this case, be in direct defiance of an act of the legislature. If the plaintiff's contention were correct this law (*Pamph. L.* 1912, *p.* 593), which applies to all municipalities alike, and represents a definite public policy, could be nullified by proof of the fact that the man had done the work and therefore was entitled to what such work was reasonably worth.

In *Hackettstown* v. *Swackhammer,* 37 *N. J. L.* 191, it was held that a note given for an unauthorized loan could not be enforced even though the money borrowed had been expended for municipal purposes. Chief Justice Beasley, in delivering the opinion of the Supreme Court, said (at *p.* 196) : "Nor do I think that it adds anything to the right, to enforce the note in this case, that the money which it represents, and which was borrowed, has been expended in behalf of the corporation for legitimate purposes. The argument on this head was that, as the money had gone for the benefit of the corporation, the law, upon general principles, would compel its repayment. If this is so, then the rejection of an implied power to borrow is of little avail. The doctrine, although repudiated in the abstract, would be ratified in the concrete. * * * It is to be noted that it is altogether a fallacy to argue that the law will raise an implied power to repay the money after it has been used. The impediment to such a theory is that the corporation has not the competency to make the promise thus sought to be implied. An express promise, to the effect contended for, would be illegal, and, therefore, clearly, the law will not create one by implication. * * * No one can justly reproach the law for not providing him a

remedy for his own folly or indiscretion. Such folly or indiscretion may have enabled the city officials to create a burden, or may have stimulated them to acts of extravagance, which would not have been otherwise created or done. It is but just that the individual who has occasioned the evil should bear the loss."

In *Hill Dredging Co.* v. *Ventnor City,* 77 N. J. Eq. 467, it was held that a municipal corporation cannot be bound by an engagement which it had no power to make; and the corporate powers of such a corporation cannot be extended by the doctrine of estoppel.

In *Dallas* v. *Sea Isle City,* 84 N. J. L. 679, this court said: "Courts are instituted to carry into effect the laws. They cannot become auxiliary to the consummation of violations of law. And so it has been held with practical unanimity in such circumstances, since an express promise to pay is *ultra vires* and unlawful, the law will not raise an implied promise."

See, also, *Bourgeois* v. *Freeholders of Atlantic,* 82 N. J. L. 82, and cases there collected.

The cases cited by the plaintiff in his brief furnish no support for a recovery in this case. For example, in the Bourgeois case, *supra,* the lumber was ordered by an unauthorized agent, but the board of freeholders had authority to buy the lumber and by its acts ratified the purchase.

In *New York, Susquehanna and Western Railroad Co.* v. *Paterson,* 86 N. J. L. 101, the city had the power to make the contract, although it was not regularly executed.

In *Wentink* v. *Freeholders,* 66 N. J. L. 65, there was no lack of power to make the contract. There was an innocent mistake for which the plaintiff was not responsible, and as to a matter about which he was not bound to inquire.

In *Klemm* v. *Newark,* 61 N. J. L. 112, the city was held to have the power to make the contract, as the making of it acted as a suspension of the ordinance which forbade it. See *MacLear* v. *Newark,* 77 Id. 712, 714.

In *Tappam* v. *Long Branch Commission,* 59 N. J. L. 371, the proceedings were regular on their face and the city was acting within the scope of its chartered power.

The case of *Bigelow* v. *Perth Amboy*, *25 N. J. L.* 297, does not appear to be applicable, but in that case the city had the power to purchase the material.

It is true that the work performed by the plaintiff in the case at bar was of a character which the defendant was authorized by law to have done; and it is true that the plaintiff performed the work for the defendant at its request. The plaintiff's difficulty is that the request was *ultra vires* and invalid. While the defendant was authorized to make a contract for this work, its authority was conditional upon its awarding the contract in accordance with the provisions of the statute of 1912. It had not the power either to make or to ratify an express contract in any other manner; and the law will not imply a contract which the parties had not power to make. The plaintiff in this case was a party to a scheme to evade and nullify a well-defined public policy of this state, and his present predicament is a direct result of that scheme. What his motive may have been is immaterial. Under such circumstances, the courts will not aid him by implying a contract which the law expressly forbids, but will leave him where it finds him.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.