69 N.J. Super. 453 (1961)
174 A.2d 390
LAWRENCE GREGGIO, PLAINTIFF,
v.
THE CITY OF ORANGE, A MUNICIPAL CORPORATION, DEFENDANT. PIETRO ROSELLE, CRESCENT J. ROSELLE, ARTHUR ROSELLE AND LOUIS ROSELLE, TRADING AS PETER ROSELLE & SONS, PLAINTIFFS,
v.
THE CITY OF EAST ORANGE, COUNTY OF ESSEX, NEW JERSEY, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 29, 1961.
*457 Messrs. McCarter & English, attorneys for plaintiff Greggio (Mr. Merritt Lane, Jr., appearing; Mr. Michael D. Loprete, on the brief).
Messrs. Budd, Larner & Kent, attorneys for plaintiff Roselle (Mr. Samuel A. Larner, appearing and on the brief).
Mr. William P. Reiss, of counsel, argued for defendants City of East Orange and City of Orange (Mr. William L. Brach, attorney for City of East Orange, appearing; Mr. John R. Murray, attorney for City of Orange, appearing; Mr. Clyde A. Szuch, on the brief).
Mr. David D. Furman, Attorney General of New Jersey, attorney (Mr. David J. Goldberg, Deputy Attorney General, appearing) for defendant State of New Jersey.
WAUGH, J.S.C.
These are two actions in lieu of prerogative writs, consolidated for trial, to determine the validity and constitutionality of two similar ordinances passed by the City of Orange on March 21, 1961 and by the City of East Orange on May 8, 1961 under the Consolidated Municipal Services Act. The cities of Orange and East Orange are two of seven municipalities attempting to provide for the joint operation of a solid-waste disposal system. Substantially similar ordinances were adopted by the Borough of Glen Ridge on March 13, 1961, the Township of Cedar Grove on March 20, 1961, the Town of Montclair on March 7, 1961, the Borough of Verona on March 7, 1961, and the Town of Bloomfield on March 6, 1961. The plaintiffs are residents, property owners and taxpayers of the two municipalities in the consolidated actions.
The ordinances were adopted pursuant to the provisions of Title 40 of Revised Statutes of New Jersey and, particularly, *458 N.J.S.A. 40:48B-1 et seq., the Consolidated Municipal Services Act. Subsequent to the adoption of the ordinance each of the seven municipalities has, by resolution of its governing body, approved the execution of the joint contract establishing the terms and conditions of the activities of the joint meeting. Pursuant to the resolutions, each municipality has executed the joint contract.
The plaintiffs attack not only the ordinances but also the validity and constitutionality of N.J.S.A. 40:48B-1 et seq. And plaintiff Roselle attacks the validity of the resolution adopted by the City of East Orange on May 8, 1961, providing for the employment of counsel in connection with the pending suit against the City of Orange, on the ground that the retainer of counsel to appear in litigation involving another municipality is beyond the power of the governing municipal body.
Preliminarily, the court will rule upon the admissibility of certain proffered documents marked D-15, D-13 and D-14 (all for identification).
Exhibit D-15, entitled "Garbage Collection Practices," is a report compiled in 1959 by John J. Bergin, Deputy Attorney General, for the Honorable David D. Furman, Attorney General of the State of New Jersey. The document reports the detailed findings resulting from exhaustive studies of the bidding practices of scavenger contractors and the methods employed by municipal authorities of seven northern New Jersey counties during the years 1952 to 1958.
Exhibit D-13, entitled "Action Program for Joint Participation in Community Solid Waste Disposal," is a report by a committee appointed to investigate the problem of solid-waste disposal directed to municipalities contemplating participation in the joint meeting for the disposal of community solid waste.
And Exhibit D-14 is a "Refuse Disposal Study" by a group of municipal representatives headed by Robert G. Hooke of Montclair, directed to the same group as Exhibit D-13.
*459 The latter two reports are authored by engineers and presumably contain factual data of a technical nature. Defendant offered this evidence for the purpose of indicating to the court the facts surrounding the refuse disposal industry, the municipal contract difficulties in this area, and the technical data on solid-waste disposal systems, their construction and operation.
Plaintiff made timely objection to the admissibility of each of these reports, contending they were immaterial and irrelevant to the issues before the court. The court reserved decision on the matter and permitted counsel to file supplemental memos.
Although the court is "under a duty to refer to the history of the times `to ascertain the reason for, and the meaning of the provisions of a statute, and to the general state of opinion, public, judicial and legislative, at the time of the enactment,'" its purpose is to ascertain legislative intent. Crater v. County of Somerset, 123 N.J.L. 407, 413 (E. & A. 1939).
Justice Heher in Jamouneau v. Harner, 16 N.J. 500 (1954), at page 515, said:
"There is a presumption of the constitutional sufficiency of a legislative enactment; and the onus of a showing contra is on him who interposes the challenge. [Citing cases] The finding of the Legislature is presumed to have the support of facts known to it `unless facts judicially known or proved preclude that possibility'; generally, it is `not the province of a court to hear and examine evidence for the purpose of deciding again a question which the legislature has already decided'; its function `is only to determine whether it is possible to say that the legislative decision is without rational basis.'"
There is also a presumption in favor of the validity of local legislative acts. West Orange v. Jordan Corp., 52 N.J. Super. 533, 538 (Cty. Ct. 1958), and cases cited therein. New Orleans Public Service v. City of New Orleans, 281 U.S. 682, 50 S.Ct. 449, 74 L.Ed. 1115 (1930), cited in Jamouneau v. Harner, supra, 16 N.J., at page 516. And
*460 "* * * it is well settled that when city commissioners, as here, perform a legislative function their motive for passing an ordinance cannot affect its validity. [Citing cases]." American Grocery Co. v. Bd. of Commrs. New Brunswick, 124 N.J.L. 293, 297 (Sup. Ct. 1940), affirmed 126 N.J.L. 367 (E. & A. 1941).
It is encumbent upon the court to glean the intent of statutes from the context and statutes in pari materia, Key Agency v. Continental Cas. Co., 31 N.J. 98, 103 (1959), in order to learn and give effect to their intent and purpose as a whole. Appeal of N.Y. State Realty & Terminal Co., 21 N.J. 90, 98 (1956). In the instant case such a reading of the title of the act and the provisions of N.J.S.A. 40:48B-1 et seq., and the title and contents of the municipal ordinances, leaves no doubt as to the intent or purpose of either the Legislature or the municipal governing bodies. Indeed, even the arguments of all counsel, both by way of brief and oral argument, indicate that they do not doubt the intent or purpose of the acts and ordinances but rather the power of the enacting bodies to effectuate that intent. The issues, then, are confined to validity, and, as stated supra, reports such as those offered into evidence cannot be resorted to by the court to determine validity.
Since the reports offered are neither necessary for the purpose offered nor material to the issues before the court, plaintiff's objections are sustained. To the extent that certain quotations from these reports appear in defendants' trial memorandum, they have been excluded from the court's consideration of the case.
The court will first consider whether N.J.S.A. 40:48B-1 et seq., is unconstitutional in that it delegates the legislative power to the management committee of the joint meeting without adequate and specific standards. As a corollary, are the ordinances invalid in that they delegate legislative authority to the management committee without adequate and specific standards?
Grants of power to municipal corporations must be liberally construed. Mullin v. Ringle, 27 N.J. 250, 256 *461 (1958); New Jersey Constitution of 1947, Art. IV, Sec. VII, par. 11; R.S. 40:42-4. Section 12 of N.J.S.A. 40:48B also states that the act is to be "construed liberally to effectuate the legislative intent and as complete and independent authority for the performance of each and every act and thing herein authorized." Especially do our courts uphold the Legislature in the exercise of legislative policy to delegate broad authority in handling of local problems that involve the health and welfare of the community. Garbage disposal is among these problems. See Marangi Bros. v. Bd. of Com'rs of Ridgewood, 33 N.J. Super. 294 (App. Div. 1954); Township of Dover v. Witt, 7 N.J. Super. 259 (App. Div. 1950); Atlantic City v. Abbott, 73 N.J.L. 281 (Sup. Ct. 1906).
It is fundamental, however, that when the Legislature delegates a portion of its legislative power to a municipal body or an administrative agency, the Legislature must prescribe the standards that are to govern the exercise of those delegated powers. Van Riper v. Traffic Tel. Workers' Fed. of N.J., 2 N.J. 335, 353 (1949). The same rule of law applies to delegation by the municipality to either an official or governmental board. Weiner v. Borough of Stratford, County of Camden, 15 N.J. 295, 299 (1954).
"In ascertaining the presence of standards and norms to support delegated powers, it is fundamental we are not confined to the four corners of the particular section, but are obligated to examine the entire act in the light of its surroundings and objectives, nor need the standards be set forth in express terms if they may be reasonably inferred from the statutory scheme as a whole." In re Berardi, 23 N.J. 485, 491 (1957).
In Ward v. Scott, 11 N.J. 117 (1952), Justice Jacobs, speaking for our Supreme Court, reiterates the necessity for standards. He states, 11 N.J., at pages 123-124:
"* * * But the exigencies of modern government have increasingly dictated the use of general rather than the minutely detailed standards in regulatory enactments under the police power. Thus, *462 the Board of Public Utility Commissioners has been guided by simple standards of `public convenience and necessity' (R.S. 48:11-1 N.J.S.A.) and `just and reasonable.' R.S. 48:2-21, N.J.S.A. See Fornarotto v. Board of Public Utility Commissioners, 105 N.J.L. 28, 32 (Sup. Ct. 1928). The Commissioner of Alcoholic Beverage Control, with authority to fix prices and promulgate regulations (Gaine v. Burnett, 122 N.J.L. 39 (Sup. Ct. 1939), affirmed 123 N.J.L. 317 (E. & A. 1939)), has been guided by the general legislative pronouncement that the statute shall be administered in `such a manner as to promote temperance and eliminate the racketeer and bootlegger.' R.S. 33:1-3, 39, N.J.S.A. And the Director of the Milk Control Board has been authorized to take such measures including the fixing of prices and the promulgation of regulations as may be `necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interests in this State engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State.' See R.S. 4:12A-21, N.J.S.A. [Citing cases]."
In Brandon v. Montclair, 124 N.J.L. 135, 143 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940), Justice Heher noted:
"A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed."
The statute in question delegates to municipalities the right to operate certain "public improvements, works, facilities, services or undertakings which any such municipality is empowered to operate" by the formation of a "joint meeting" and the power to enter into a "joint contract for a period not to exceed 40 years." The joint meeting's powers and authorities are set forth. A joint contract is provided for, and "the joint contract shall be subject to approval by resolution of the governing bodies of each of the municipalities prior to its execution." Amendment is also provided for. The management committee "shall adopt rules and regulations to provide for the conduct of its meeting and the duties and powers of the chairman * * *"
*463 It is noted that by reason of N.J.S.A. 40:48B-2.1(d) the joint meeting has power and authority:
"To do and perform any and all acts or things necessary, convenient or desirable for the purposes of the joint meeting or to carry out any powers expressly given in this act."
The limitation on the management committee in N.J.S.A. 40:48B-2.1 is that the management committee may exercise the power and authority of the joint meeting "to the extent provided in the joint contract." And the limitation, on both the management committee and joint meeting is "to do and perform any and all acts or things necessary, convenient or desirable for the purposes of the joint meeting or to carry out any powers expressly given in this act." Thus, the powers are limited by the standards set in this clause and by express grant.
A great measure of the work of the management committee is administrative rather than legislative. See Wagner v. Mayor, etc. City of Newark, 42 N.J. Super. 193, 213 (Law Div. 1956), reversed on other grounds, 24 N.J. 467 (1957). Even where the work is not administrative in nature, the statute authorizes a redelegation of power and sets sufficient standards.
Plaintiffs suggest that since the management committee may exercise the power and authority of the joint meeting, it may "enter into any and all contracts or agreements and to execute any and all instruments" without limitation. Obviously, the limitations are to be found in the act. The objects of the joint contract and the joint meeting are restricted; contracts must be signed and approved; costs are fixed in the contracts; and, lastly, "the management committee shall exercise all of the powers of the joint meeting subject to the provisions of the joint contract." It is clear to the court that the powers of the management committee are properly circumscribed.
It is true that under N.J.S.A. 40:48B-2.1, which states:
*464 "(g) To enter into a contract or contracts providing for or relating to the use of its lands, public improvements, works, facilities, services or undertakings, or any part thereof, by municipalities, who are not members of the joint meeting, and other persons, upon payment of charges therefor as fixed by the management committee;"
that no standard is provided for fixing charges to be made by non-members, but in this respect it must be assumed that ordinary business judgment or reasonableness is inferred. In re Berardi, 23 N.J. 485 (1957). If the joint meeting has a large unused potential anticipating growth by member municipalities, it may very well be a reasonable exercise of business judgment to make contracts with non-member municipalities for less than the cost to member municipalities. On the other hand, it may find that its facility is very desirable to non-members and be able to contract at a profit. If costs were not fixed reasonably, timely attack could be made upon the validity of the resulting contract.
An analogous situation arose in New Jersey under R.S. 40:63-68, 69 which provide for disposal of sewage either separately or by "joint meeting." R.S. 40:63-68(b) states that the governing body of a municipality might contract with other governing bodies "to receive and care for, or dispose of, the sewage of such other municipality." It is noted by the court that no other standards were set forth in the statute. Pursuant to this statute the Borough of Caldwell entered into certain contracts with the Borough of West Caldwell. The court in the case of West Caldwell v. Caldwell, 26 N.J. 9 (1958) stated, at pages 22, 23:
"* * * the `existing statutes and rules of law are always among the [surrounding] circumstances' to be considered in the exercise of the interpretive process. Corbin, Contracts, Sec. 551, 803. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), Cardozo, J."
In the Caldwell case the court held that a municipality "cannot bind itself by a perpetual contract, or a contract of unreasonable duration, unless by legislative sanction." *465 (26 N.J., at page 31) The court applied a rule of reasonableness under all the circumstances (26 N.J., at page 24). While the case deals with two municipalities as does the statute (R.S. 40:63-68(b)), whereas the statutes and ordinances here under consideration permit contracts with "other persons" as well as municipalities, the same rule of reasonableness applies.
The last paragraph of N.J.S.A. 40:48B-5 provides:
"The joint contract may provide for the delegation of the management, control or administration of any or all of the lands, public improvements, works, facilities, services or undertakings of the joint meeting to the governing body of any 1 of the several contracting municipalities, in which event such governing body shall have and exercise all of the powers and authority of the management committee with respect to such delegated functions." (Emphasis added)
The underlying words clearly demonstrate that this delegation of power is administrative in nature and not legislative. Standards are, therefore, not necessary.
Are the population figures to be used in determining the apportioned share of cost to each municipality too vague and not properly standardized? Article 4 of the joint contract indicates that the population figure of 1960, as published by the United States Bureau of Census, is also to be used. The article also lists the figure for each of the seven municipalities. Article 7 provides for the updating of the official census figures as they become available. These articles clearly provide a formula by which the costs may be tabulated.
Nor do the ordinances fail to set forth adequate standards to guide the management committee in the termination of the contract. The problem of termination is dealt with in article 14 of the joint contract, complying with the requirements of N.J.S.A. 40:48B-9, and making provision in detail for the problems arising from the termination. The contract, ordinance and statute must be considered together.
*466 Plaintiffs object to the use of the word "population" in subsection (c) of the ordinance as too vague a guide in the apportionment of costs, upon the termination of the management committee. Plaintiff's objection lacks merit. All seven ordinances [the Borough of Glen Ridge excepted (Exhibit D-3)] contain an obvious typographical error in section 1(c) in the word "termination." Obviously, the sentence should read "on the basis of population upon the determination of the Management Committee by unanimous vote" (emphasis added), and when so read the problem of standards no longer exists.
Plaintiffs argue that the ordinances in question are invalid and unconstitutional since they fail to comply with the terms of the statute. It is suggested that the ordinances do not comply with N.J.S.A. 40:48B-2 because the ordinances merely authorize the municipalities to enter into a contract but do not, even "in general terms," state the manner in which the waste disposal system shall be jointly operated, as required by N.J.S.A. 40:48B-2.
N.J.S.A. 40:48B-2 states in part:
"Such ordinance shall set forth the public improvements, works, facilities, services or undertakings which the participating municipalities desire to operate jointly, and shall provide in general terms the manner in which the public improvements, works, facilities, services or undertakings shall be jointly operated."
The East Orange ordinance, PR-1 in evidence, and the Orange ordinance, PG-1 in evidence, provide:
"(a) The joint contract to be entered into shall provide for the formation of a joint meeting to acquire, construct, maintain and operate a solid waste disposal system for the use and benefit of the municipalities executing such joint contract and for the use of such other municipalities and other persons as may be authorized by the Joint Meeting. Such solid waste disposal system shall include all improvements, works, facilities and property, real and personal, and rights therein, and appurtenances necessary, useful or convenient for the treatment, deposit and disposal, including incineration or other reduction processes of solid waste, garbage, ashes, trash or any solid refuse matter not usually collected, carried away and disposed of by a sewerage system.
*467 (b) The solid waste disposal system of the Joint Meeting shall be jointly operated by a management committee as provided in the aforesaid act of the Legislature of the State of New Jersey, and such management committee shall be authorized and empowered by the terms and provisions of the joint contract to have and exercise all of the powers and authority of the Joint Meeting as provided in said act of the Legislature of the State of New Jersey, except to the extent as may be provided in the joint contract.
(c) The costs and expenses incurred in connection with initial acquisition and construction of the solid waste disposal system and all of the costs and expenses of the solid waste disposal system incurred prior to its use by two-thirds of the municipalities entering into the joint contract, other than the costs of operating the solid waste disposal system, shall be apportioned among the municipalities entering into the joint contract on the basis of population. All of the costs and expenses of the solid waste disposal system incurred subsequent to its use by two-thirds of the municipalities entering into the joint contract shall be apportioned among the municipalities entering into the joint contract on the basis of their use of the solid waste disposal system except that the costs and expenses of subsequent acquisition and construction may be apportioned among the municipalities entering into the joint contract on the basis of population upon termination of the management committee by unanimous vote.
(d) The joint contract to be entered into shall provide for a term of twenty (20) years subject to provision for earlier termination as provided in said act of the Legislature of the State of New Jersey and subject to provision for discontinuance of participation by one or more municipalities on such terms and conditions as may be provided therein.
(e) The joint contract shall be subject to approval by resolution of this City Council prior to its execution by the Mayor and City Clerk."
It is not necessary that the ordinances set forth the specific mechanics of the operation of the disposal system. N.J.S.A. 40:48B-2.1(d), which empowers the joint meeting and the management committee "To do and perform any and all acts or things necessary, convenient or desirable for the purposes of the joint meeting or to carry out any powers expressly given in this act," so indicates. N.J.S.A. 40:48B-4, which states "The joint contract shall provide for the operation of the public improvement," provides that the machinery for operating the disposal system should be set forth in the joint contract and not necessarily in the ordinances.
*468 Section 1, subsection (b) of these ordinances, which empowers the management committee to operate the garbage disposal system in accordance with the provisions of the act, subject to the terms of the joint contract, is not to be considered alone on the question of compliance with the statute. An inspection of the whole ordinance indicates that many general terms are revealed.
Section 1 authorizes the governing body of the municipality to enter into a joint contract, on behalf of the municipality, with six other municipalities that have adopted similar ordinances, for the purpose of organizing a solid-waste disposal system. Subsection (a) describes, in general terms, what shall be included in the system. The joint contract shall create a joint meeting for the operation of the system. Subsection (b) states that the system shall be jointly operated by the management committee, and it incorporates by reference the act and the joint contract. Subsection (c) states the manner in which costs are to be apportioned, and subsection (d) states the maximum duration of the joint contract.
I conclude that the ordinances set forth the nature of the proposed joint action in a manner that complies with N.J.S.A. 40:48B-2.
Plaintiffs contend that the ordinances are unconstitutional since they are inconsistent with the provisions of N.J.S.A. 40:50-6. That statute provides as follows:
"No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract * * *."
Whereas, N.J.S.A. 40:48B-7 provides:
"The cost of acquiring and constructing any public improvements, works, facilities, services or undertakings, or any part thereof, as determined by the management committee, shall be apportioned *469 among the participating municipalities as provided by the joint contract. Each municipality shall have power to raise and appropriate the funds necessary therefor in the same manner and to the same extent as such municipality would have if it were acquiring and constructing the same for itself, including the power to authorize and issue bonds or other obligations pursuant to the local bond law. The management committee shall certify to the participating municipalities the cost of such acquisition of construction, as well as the apportioned shares thereof, within 15 days after its action thereon."
And N.J.S.A. 40:48B-8 provides:
"The management committee shall, not later than November 1 of each year, certify to the participating municipalities the total costs and expenses of operation, other than acquisition and construction costs, of the public improvements, works, facilities, services or undertakings for the ensuing year, in accordance with the terms and provisions of the joint contract, together with an apportionment of such costs and expenses of operation among the participating municipalities in accordance with the method of apportionment provided in the joint contract. It shall be the duty of each participating municipality to include its apportioned share of such costs and expenses of operation in its annual budget, and to pay over to the management committee its apportioned share as provided in the joint contract. Operations under the budget and related matters shall be subject to and in accordance with rules of the Division of Local Government. For the first year of operation under the joint contract, a participating municipality may adopt a supplemental or emergency appropriation for the purpose of paying its apportioned share of the costs and expenses of operation, if provision therefor has not been made in the annual budget."
Under section 2 of the ordinances under attack, the City of East Orange appropriated "$31,770 from the `Capital Improvement Reserve' to be paid to the management committee of the Joint Meeting, upon execution of the joint contract by all of the municipalities which adopt ordinances substantially similar to this ordinance as the City's share, on the basis of population," of anticipated costs in connection with the organization of the management committee and preliminary costs toward the acquisition of the system. The City of Orange has a similar section which appropriates $14,910 as the city's share of the anticipated initial expenses.
*470 The plaintiff's argument, as the court understands it, is that the total cost of the contract must be included in the budget under N.J.S.A. 40:50-6, read in conjunction with 40:2-29, and that those statutes, which refer specifically to financing, must be given effect as a limitation on N.J.S.A. 40:48B-1 et seq., which relates to powers and not to finance. See State v. Hotel Bar Foods, 18 N.J. 115 (1955), wherein Justice Jacobs, at page 128, citing the case of Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 165 (1949), stated:
"* * * `"where there is any conflict between a general and specific statute covering a subject in a more minute and definite way the latter will prevail over the former and will be considered an exception to the general statute."'"
Their argument is that N.J.S.A. 40:48B-7 pertinently provides in part:
"* * * Each municipality shall have power to raise and appropriate the funds necessary therefor in the same manner and to the same extent as such municipality would have if it were acquiring and constructing the same for itself, * * *." (Emphasis added)
They contend that N.J.S.A. 40:48B-7 clearly requires the execution of a joint contract as a condition precedent to the appropriation of funds; whereas, the ordinances here under attack in subsection (c) and in section 2 appropriate the anticipated costs prior to the execution of the contract.
It appears that each municipality included an appropriation of funds in section 2 of the ordinance sufficient to meet its share of the initial costs of the operation. This clearly satisfies the provisions of both N.J.S.A. 40:50-6 and 40:2-29. See Fereday & Meyer Co., Inc. v. Elizabeth Board of Public Works, 27 N.J. 218 (1958); In re Petition of Gardiner, 67 N.J. Super. 435 (App. Div. 1961). This is particularly true where the long-term contract is specifically authorized by statute, as here. In re Petition of Gardiner, supra. Both municipalities acted prudently in appropriating *471 the estimated costs of the first year of the contract thereby complying with N.J.S.A. 40:50-6 and 40:2-29. They did not rely on the emergency provision of N.J.S.A. 40:48B-8.
Plaintiff contends that the appropriations in section 2 of the ordinances are solely to finance the expenses incurred in connection with the preliminary steps to be taken by the municipalities executing the joint contract, and that no ordinance has been adopted "authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract" as required in N.J.S.A. 40:50-6. It is the defendant's argument that East Orange and Orange, in accordance with the requirements of N.J.S.A. 40:50-6, have by section 2 of the ordinances in question appropriated money for 1961, the first year of the joint contract, in amounts estimated to meet each municipality's share of the anticipated costs of the joint meeting for the year 1961. The interrogatories support the defendant's position.
The court concludes that N.J.S.A. 40:48B-7 does not require a joint contract as a condition precedent to the apportionment of money. It merely requires the joint contract to provide a formula for the apportionment of "the cost of acquiring and constructing any public improvements, works, facilities, services or undertakings, or any part thereof, as determined by the management committee." The municipalities have complied with the provisions of N.J.S.A. 40:50-6 and the other pertinent statutes.
Do the municipal defendants have the power to acquire lands beyond their border for the purpose of operating a dumping facility for destructible waste? Plaintiffs urge they do not. Their argument is that a joint meeting may be formed only to operate such facilities as "any such municipality is empowered to operate." N.J.S.A. 40:48B-2. They maintain that there are three exclusive methods for the collection and disposal of garbage refuse and waste matter by a municipality. The first is by operating its own system (R.S. 40:66-1); the second is by contracting *472 with another (N.J.S.A. 40:66-4); and the third is by licensing to a private scavenger (N.J.S.A. 40:52-1(c)). Since neither defendant operates its own municipal system under R.S. 40:66-1, but rather contracts out its collection and disposal under N.J.S.A. 40:66-4, then it has no power to operate independently a disposal site, nor may it acquire property therefor. R.S. 40:66-1 provides:
"The governing body may provide for the cleaning of the streets of the municipality, and for the collection, removal and disposal of ashes, garbage, refuse and waste matter, and may establish and operate a system therefor; purchase and operate the necessary equipment for the cleaning of streets, and for the collection, removal and disposal of ashes, garbage, refuse and waste matter; make amend, repeal and enforce all such ordinances, resolutions, rules and regulations as may be deemed necessary and proper for the introduction, operation and management of such system, and for the maintenance and operation of a plant for the cremation, destruction and disposal of garbage, refuse and waste matter, and for the government of employees connected therewith."
N.J.S.A. 40:66-4 provides:
"The governing body may, if it deem it more advantageous, contract with any person for the cleaning of the streets, or the collection, removal and disposal of ashes, garbage, refuse and waste matter or any portion thereof. Before making any such contract or contracts, the governing body shall first adopt specifications for the doing of the work in a sanitary and inoffensive manner, and any such contract or contracts the amount of which exceeds one thousand dollars ($1,000.00) shall be entered into and made only after bids shall have been advertised therefor, and awarded in the manner provided in chapter fifty of this Title (§ 40:50-1 et seq.). The bidder or bidders to whom the contract or contracts shall be awarded shall give satisfactory bond or other security for the faithful performance of the work. The contract shall include and in all respects conform to the specifications adopted for the doing of the work."
As authority for their position, plaintiffs rely on Dover Tp. v. Kassanoff, 37 N.J. Super. 582 (App. Div. 1955), as authority for the proposition that it is only when a municipality operates its own system under R.S. 40:66-1 that *473 it has the authority to acquire a dumping site; and conversely, if it operates under N.J.S.A. 40:66-4, as do these defendant municipalities, they have no such implied power.
This contention is buttressed by the language used in Eckert v. West Orange, 90 N.J.L. 545 (E. & A. 1917), at page 548, wherein the court said:
"It thus appears that the town council has authority to provide for the collection and disposal of rubbish and garbage in either of two ways, but not otherwise  first, it may provide for the doing of the work by the town itself. If it adopts this course, it must do so by ordinance, with all of the formalities necessary to enact a valid ordinance; second, it may make a contract with someone to do the work. But where more than $500 is to be expended, it has no authority to make a valid contract until it has first publicly advertised for bids, and the contract can then be awarded only to the lowest responsible bidder."
This language was cited in McKim v. South Orange, 133 N.J.L. 470 (Sup. Ct. 1945), at page 472 and in Marangi Bros. v. Bd. of Com'rs of Ridgewood, 33 N.J. Super. 294 (App. Div. 1954), at pages 298, 299.
A reading of the Eckert case and the McKim case indicates that the language is obiter dicta. In the Eckert case where a contract, which required bidding by statute, was let to a garbage collector without bidding, the issue was whether or not recovery could be had on quantum meruit.
The issue in the McKim case was whether or not the municipality had the right under N.J.S.A. 40:66-4 to contract collection work to one scavenger and compel each householder to pay established rates. The court held that N.J.S.A. 40:50-1 was incorporated by reference with 40:66-4, therefore, the contract attempted there was violative of N.J.S.A. 40:50-6.
Marangi, supra, quotes the language in passing, but indicates clearly, at page 303, that the McKim case turned upon the failure of competitive bidding. In Marangi, the court upheld an arrangement partaking of both an "exclusive *474 license" and a "contract." In arriving at its conclusion, the court reiterated the rule of presumptive validity of acts by municipalities, especially with respect to the safeguarding of public health.
The plaintiff interprets the phrase in N.J.S.A. 40:66-4 to mean any portion of the "ashes, garbage, refuse and waste matter" while defendant contends it means any portion of the "system" that is, "collection, removal and disposal."
The court finds the defendant's interpretation correct, i.e., that the several functions of the system can each be carried out by contract or by municipal operation. It is the settled law in New Jersey that ambiguous statutory phrases are to be interpreted in light of the occasion and necessity of the law, the mischief felt and the remedy in view, and in light of statutes dealing with a similar subject matter. Key Agency v. Continental Cas. Co., 31 N.J. 98, 103 (1959). The court reaches the above conclusion following an inspection of other statutes.
N.J.S.A. 39:4-54 provides: "A municipality * * *, while engaged in the collection of garbage * * *." If it were reasonable to assume that the intention of the Legislature was that collection and disposal were not severable, then it would be reasonable to assume that this statute would have read "engaged in the collection and disposal of garbage."
N.J.S.A. 40:1-34 deals with the periods of usefulness of public property and it is interesting to note that although it provides single useful life terms for "gas systems" (see l), "sewer systems" (see s), "electric light or power systems" (see g) and "signal systems" (see t), it does not provide for "garbage systems" but rather garbage, refuse, or ashes incinerator or disposal plant.
N.J.S.A. 40:63-43, although it is primarily concerned with sewage, formerly read, "The governing body may enter into contract * * * for * * * acquisition of any work or works and plans for the purification, disposal of, and dealing with sewage, or the collection and disposal of garbage and other refuse * * *."
In 1959, it was amended to read "The governing body may enter into contract * * * for * * * acquisition of any work or works and plants for the purification, disposal of, and dealing with sewage, or for the treatment or disposal of garbage and other refuse * * *." The substitution of "treatment or" for "collection and" is a definite indication that the Legislature considered collection and disposal to be separable. (Emphasis added)
*475 N.J.S.A. 40:63-43 also provides for municipal operation of a disposal plant as does R.S. 40:66-2, enacted at the same time as the statutes in question and neither includes a proviso limiting the authorization to municipalities for collection and removal facilities also. To endow these statutes with such an interpretation would be as unreasonable as assuming that a municipality which granted an incinerator license to a private operator within its borders under R.S. 40:66-6 could not operate its own collection facility. To provide such an interpretation would also flaunt the public policy of the Legislature as set forth in N.J.S.A. 40:66A-2:
"It is hereby declared to be in the public interest and to be the policy of the State to foster and promote by all reasonable means the health and welfare of the citizens thereof by the proper collection and disposal of garbage and other refuse matter" (Emphasis added) Lastly, when R.S. 40:66-4 was amended, Senator Kates, in his introductory statement stated that the purpose of the amendment was "to permit municipalities to award a contract for the collection of garbage" in the manner provided in R.S. 40:50-1. (Emphasis added)
This singular treatment of "collection" taken together with the similar singular treatments of disposal plants, as noted above, taken in light of the Legislatures declared policy in this area can lead only to the conclusion that R.S. 40:66-1, et seq. provide municipalities with the authority to operate a complete system for the collection, removal and disposal of garbage and refuse and leave to the municipality the option of self-operation of any or all functions of that system together with the authority to contract for those functions which it does not wish to operate.
Although no case can be found discussing the specific issue under review here, a reading of Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14 (1950), indicates a factual situation in the Borough of Lodi which is somewhat analogous to the joint operation contemplated by the defendants. However, there the specific legal issue here involved was not raised.
The history of N.J.S.A. 40:66-4 leads the court to the conclusion that the municipality may operate its own dumping facilities while contracting the collection portion of the operation. The act was originally adopted in the Laws of 1917, c. 152, Art. XXIII, § 4. It provided:
"If in the opinion of the governing body it is more advantageous for such municipality to have the streets thereof cleaned, or the ashes and garbage and other refuse collected and removed and disposed *476 of by persons other than the authorities of the municipality, they shall have power to make a contract or contracts for such works, or any portion thereof, with any individual or individuals, corporation or corporations." (Emphasis added)
The language remained substantially the same in the 1924 Cumulative Supplement. See sec. 1911-1924 Cumulative Supplement to the Compiled Statutes of New Jersey, Vol. 2, sec. 136-2304.
The 1937 revision of the Revised Statutes rearranged the language to read as it does today:
"The governing body may, if it deem it more advantageous, contract with any person for the cleaning of the streets, or the collection, removal and disposal of ashes, garbage, refuse and waste matter or any portion thereof."
However, the mere rearrangement of the language does not effect a change in the substance of the statute. Justice Burling stated in Murphy v. Zink, 136 N.J.L. 235 (Sup. Ct. 1947), affirmed per curiam, 136 N.J.L. 635 (E. & A. 1948), at pages 244-5:
"* * * While the Revision is a wholly independent enactment and supersedes all pre-existing general laws, State v. Czarnicki (Supreme Court, 1940), 124 N.J.L. 43, 45; nevertheless, it is the rule that a re-arrangement of the statutes, in a general revision of the law, does not usually change the statute's significations. Pomeroy v. Mills (Court of Errors, 1883), 37 N.J. Eq. 578, 580. Moreover a mere change in the words or phraseology in a general revision does not change its effect, unless there is evidence of a legislative intention to work a change. * * *
There is a presumption against a legislative intent to effect a change in substance by a revision of the general laws. Mere changes in phraseology and even the omission of words, does not of necessity overcome the presumption. The intention to effect a change in substance must be expressed in language excluding a reasonable doubt. * * *"
See also R.S. 1:1-4, which provides:
"The provisions of the Revised Statutes, not inconsistent with those of prior laws, shall be construed as a continuation of such laws."
*477 The conclusion the court reaches here is not inconsistent with the holding in Dover Tp. v. Kassenoff, 37 N.J. Super. 582 (App. Div. 1955). There Justice (then Judge) Francis was not called upon to determine whether or not a municipality may divide the operation of a system for the collection, removal and disposition of ashes, garbage, refuse and waste matter. It is this court's conclusion that it may do so, and if it does, it may acquire land on which to dump destructible waste matter under R.S. 40:66-1.
Finally, the plaintiffs, Roselle et als, challenge the resolution (Exhibit PR-3) of the defendant City of East Orange which authorizes the retention of counsel "on behalf of the City of East Orange * * * to intervene in the pending suit entitled Lawrence Greggio v. The City of Orange" and the appropriation of "$635 as the share of the City of East Orange for the initial legal fees and costs" charging the amount to contingent expense appropriations. The intervention never occurred because a separate suit was brought against the City of East Orange and consolidated with the Greggio case for trial.
The right of the city to engage special counsel is not contested. See cases collected in DeBow v. Lakewood Township, 131 N.J.L. 291, 295 (Sup. Ct. 1944). Rather, the attack is that the City of East Orange may not bear the expenses of a suit against another municipality; and that there was no budget appropriation or ordinance authorizing the expenditure in accordance with N.J.S.A. 40:2-29 and 40:50-6.
As to the first part of the attack, a municipality has the right to take reasonable measures to conserve its own vital interests in a matter in which it has a stake. I think this rule is clearly established by the case of City Affairs Committee v. Jersey City, 134 N.J.L. 180 (E. & A. 1945). In the case before us, the City of East Orange, together with other municipalities, has an interest at stake and has a right to preserve that interest.
There is no proof before the court that N.J.S.A. 40:2-29 was not complied with and I must presume it was. *478 There is no proof that there were not sufficient funds in "contingent expense appropriations" nor did the plaintiff contend this is a subterfuge. An ordinance under N.J.S.A. 40:50-6 was therefore not necessary. See De Bow v. Lakewood Township, supra, 131 N.J.L., at page 295.
For the above reason, I conclude that N.J.S.A. 40:48B-1, et seq., and the ordinances under attack are valid and constitutional; and the actions by the defendant municipalities are within the scope of this authority.