91 N.J. Super. 336 (1966)
220 A.2d 211
S.H. ROEMER COMPANY, INC., PLAINTIFF,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF CAMDEN, THE FREE COUNTY LIBRARY OF THE COUNTY OF CAMDEN AND JOSEPHINE HAZELY, PATRICK FITZGERALD, MARY E. RILEY, REGINA ALESSI, VIVIAN BATEMEN, HILLIARD T. MOORE, SR., COMMISSIONERS OF THE COUNTY LIBRARY COMMISSION OF THE COUNTY OF CAMDEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 16, 1966.
*337 Mr. Albert H. Bierman for plaintiff.
Mr. A. David Epstein, Assistant County Counsel, for defendants.
Mr. Thomas P. Cook, amicus curiae.
BROWN, R.C., J.C.C. (temporarily assigned).
This action grows out of the sale of certain library books by the plaintiff to the Free County Library of the County of Camden.
The issues framed at the pretrial conference are sounded in both contract and in quantum meruit.
By order of the court, Thomas P. Cook, Esquire, as counsel for the New Jersey Library Association, was given leave to appear amicus curiae.
*338 The case came on for trial before the court without a jury. The following facts developed, all of which are undisputed.
Plaintiff is a wholesale bookseller, limiting its operation to the State of New Jersey. It deals with various libraries and others throughout the State. For the past 17 years plaintiff has been supplying books to the Free County Library of the County of Camden. There has never been any public advertisement for bids by the library, the Library Commissioners or the county.
In the months of July, August, September and October of 1963, books were purchased for the County Library on various dates and in various amounts. There were in all some 14 purchases during the period for a total sum of $8,375.85. The largest order was for $970.40 on August 9, 1963, but on the same day there were four other purchases as follows: $821.20, $763.43, $439.61 and $266.76, making a total of $3,261.40 for that date. On the 19th of the same month, there were two purchases totalling $1,448.33. There were other purchases on August 21 of $327.30 and on August 29 of $564.56. Thus the total purchases for the month of August 1963 amounted to $5,601.59. It should be noted from the itemized account put in evidence that most of the items were either for single volumes or for very small quantities of the same book.
The prices charged the county by the plaintiff were identical with those being charged the New Jersey State Library at that time for like items and the discounts allowed were also the same. The county admits that all of the books were delivered by plaintiff, were accepted and used by the library and that they were fairly priced. The county further admits that, except for minor adjustments, none of the books have been returned and that it has received full benefit therefrom.
The county's refusal to pay is based upon the fact that it did not advertise for bids as required by R.S. 40:25-2. It alleges that because the total purchases for the period in question exceeded $2500, it was prohibited by law from entering into a valid agreement with plaintiff, that the acts *339 of its agents in purchasing the books were ultra vires and therefore null and void ab initio. Thus the county contends that plaintiff may not recover from it.
More particularly, the county states that The Camden County Library Commission, organized in accordance with N.J.S.A. 40:33-1 et seq. is an agent of the county government within the description of N.J.S.A. 40:25-2, which provides in part:
"No officer, board, commission, committee, department or other branch of any county government shall enter into any contract for the doing of any work or the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended together with any other sums expended or to be expended for the same immediate purpose and all matters relating thereto, exceeds in the aggregate the sum of $2,500.00, without first publicly advertising for bids therefor. All such contracts shall be awarded to the lowest responsible bidder who has submitted a bid in compliance with the specifications; * * *."
The county argues that although no New Jersey case has specifically held this statute applicable to a county library commission, a similar statutory provision governing municipal contracts, N.J.S.A. 40:50-1, has been held to apply to contracts made by a municipal library. Glick v. Trustees of Free Public Library of Newark, 2 N.J. 579 (1949).
Plaintiff on the other hand argues that the above statute does not apply to these transactions or if it does that it is entitled to be paid on a quantum meruit.
Mr. Cook appearing, amicus curiae, agrees with plaintiff that the statute does not apply and advances strong arguments as to why the statute does not and should not apply to the purchase of books by a county library.
The contention of the county that, although there has been no court decision specifically construing the statute in question with respect to county libraries, the legal principles laid down in Glick v. Trustees of Free Public Library of Newark, supra, must control here, is a sound one. In that case the Supreme Court said:
*340 "* * * the argument, in brief, is that the Trustees were constituted `a separate corporate entity' by the Act under which it came into being, R.S. 40:54-1 et seq. * * *.
There is no need to delineate the statutory scheme. It suffices to say that the function delegated to the library management is local and municipal in legislative concept; the instrumentality is an adjunct of the local government in the field of education and intellectual recreation, and under its control. It is the municipality that is empowered to `establish a free public library within its corporate limits.' R.S. 40:54-1, N.J.S.A. There is provision for a referendum. R.S. 40:54-2 et seq, N.J.S.A. The cost of operation is borne by local taxation; and the money is appropriated by the local governing body or appropriate board. R.S. 40:54-8, N.J.S.A. The trustees are appointed by the mayor or chief executive; and the mayor and one of the local superintendents of schools or the supervising principal are made members of the board. R.S. 40:54-9, N.J.S.A. Library funds are deposited in the municipal treasury, and drawn upon by municipal officers on the vouchers of the trustees. R.S. 40:54-18, N.J.S.A. And, as we have seen, the library employees are in the paid service of the municipality. It is an agency of the municipality notwithstanding its incorporation as a body politic. That in itself does not give rise to a relationship radically different in character from that which would otherwise exist. It is that substance and not the form of the creation that is the key to the legislative design.
The corporate body thus created is embraced within the provision of R.S. 40:50-1, N.J.S.A., forbidding a `municipality' from entering into a contract of the class specified, unless the `governing body' shall first publicly advertise for bids, and shall award the contract to the lowest responsible bidder. By clear implication, the term `municipality,' as here employed, comprises the component parts and agencies of the local governmental subdivision, all designed to advance municipal function; and it would be contrary to the plain policy of the statute to hold that the central government is bound by the provision for competitive bidding but the library board is not merely because, for the purpose of convenience in administration, it has been given corporate status. The board is a `governing body' within the intendment of the statute. R.S. 40:42-2, N.J.S.A., defines the term to mean the board or body in each municipality designated by statute effective in such municipality as the board or body having control over the subject matter in connection with which the term is used, and having the power and authority to legislate thereon, whether designated as `"board of aldermen," "common counsel," "board of commissioners," "borough council," "township committee," "village trustees," "improvement commission," "board of street and water commissioners," "board of public works," "board of finance," "board of health," "park commissioners," "recreation commissioners," or otherwise.'
A thing which is within the object, spirit and meaning of the statute is as much within the statute as if it were within the letter. *341 Conversely, a thing which is not within the intent and spirit of a statute is not within the statute, though within the letter. Lewis' Sutherland Statutory Construction, 2d Ed., 379. When the general intent is found, general words may be restrained accordingly, and those of narrower significance expanded to effectuate that intent. This is an ancient canon of construction, Eureka Consolidated Mining Co. v. Richmond Mining Co., 1877 [Eureka Case], Fed. Cas. No. 4548, 4 Sawyer 302, 317. The statute itself furnishes the best means of its own exposition; and the legislative purpose here is evident when the whole of the provision is related to the obvious policy and purpose. The intent is the essence and the life of the law."
There can be no doubt that the Library Commission is an agency of the County of Camden within the meaning of R.S. 40:25-2. This Statute, unlike R.S. 40:50-1 specifically includes "officer, board, commission, committee, department or other branch of any county government."
We then come to the question of whether or not the Legislature intended to include library books, as purchased here, within the purview of the Statute.
Plaintiff says that it was not so intended. The statutory scheme regulating the award of contracts by a county government provides for exemption from the bidding requirement where the service or product is to be furnished by a public utility, N.J.S.A. 40:25-2; where an emergency is declared by resolution of the body, N.J.S.A. 40:25-3, or where the contract deals with the hiring of labor or equipment for emergency snow removal or with the purchase of perishable items or motor vehicles, N.J.S.A. 40:25-4. In addition to these express statutory exceptions, judicial decisions, construing both N.J.S.A. 40:25-2 and 40:50-1, have created other exceptions by distinguishing between "apparatus" and "materials or supplies," and holding the former to be outside the scope of the statute. This distinction has apparently been acquiesced in by the Legislature. The "apparatus" exception has been applied to the purchase of trucks, Peters Garage, Inc. v. City of Burlington, 121 N.J.L. 523 (Sup. Ct. 1939) affirmed 123 N.J.L. 227 (E. & A. 1939); voting machines, Automatic Voting Machine Co. v. Board of Chosen Freeholders of Bergen County, 120 N.J.L. 264 (Sup. Ct. 1938); fire *342 truck and miscellaneous equipment. Simmons v. Mayor and Council of Wenonah, 6 N.J. Misc. 902, 143 A. 73 (Sup. Ct. 1928); and pumper, chemical and hose wagon, Hahn Motor Truck Corp. v. Atlantic City, 6 N.J. Misc. 234, 140 A. 675 (Sup. Ct. 1928). The courts have held to be "materials or supplies" such items as tires, Schwartz and Nagle Tires v. Board of Chosen Freeholders of Middlesex County, 6 N.J. Super 79 (App. Div. 1949); and gasoline, Shore Gas and Oil Co. v. Borough of Spring Lake, 27 N.J. Super. 33 (App. Div. 1953).
The distinction made in these cases is between apparatus on the one hand and materials and supplies on the other. In defining apparatus our courts have said, "There can be no standard specifications for such apparatus. Each manufacturer makes his apparatus under patents, processes, or designs different from that of other manufacturers. It is these differences which support the claim of the superiority of apparatus made by each manufacturer over that manufactured by his competitors." Hahn Motor Truck Corp. v. Atlantic City, 6 N.J. Misc. 234, 140 A. 675 (Sup. Ct. 1928).
Although a book may be distinct or unique, the publishers of the books in question do not sell directly to libraries but through competing distributors, none of whom have a monopoly. Plaintiff alleges that the only price it may charge for a book is the one set by the publisher and that this may not be cut. Such an arrangement, if true, is in restraint of trade and against public policy and thus would be null and void. An illegal act or arrangement cannot justify the circumvention of the bidding laws of this State.
Plaintiff says further that none of its sales or contracts exceeded $1,000 and unless these orders can be described as all being for the same immediate purpose, the $2500 statutory limit relieves the Library from seeking public bids. An examination of the itemized account clearly indicates that these purchases were for the same immediate purpose and public bids were required. Plaintiff contends that the distinction *343 here is more than one of semantics. Libraries must and should purchase books from time to time as the need therefor arises. If every purchase of books is for the same immediate purpose as every other purchase of books within the meaning of this statute, then a library cannot purchase even a single book without inviting bids. The library will either have to delay the purchase until such time as a sufficient volume is required to justify the administrative burden and expense of advertising or it will be forced into the inefficiency of continued and repeated advertising. The statute should not be construed to give such an absurd result. Under such a construction, neither the public nor the book supplier benefits, particularly in view of the fact that the value of the books procured is readily ascertainable.
This argument does not fit the facts. Plaintiff's president in order to support his company's claim of reasonable value on quantum meruit, testified that the prices charged the county were identical in all respects with those charged the New Jersey State Library and that the State Library prices were established after public bidding; presumably under the act which governs state buying, R.S. 52:34-1. The plain fact is therefore that bidding under this law is protected.
There is no doubt that this transaction is ultra vires and that plaintiff may not recover against the county on its claim of a valid contract.
We now come to plaintiff's contention that if a valid contract does not exist, the county, nevertheless, should be ordered to pay the reasonable value of the books sold to and retained by it.
The Supreme Court has pointed out in Hudson City, etc., Co. v. Jersey City Incinerator Authority, 17 N.J. 297 (1955):
"The basic rule * * * is that there can be no recovery under an express municipal contract entered into without observing the mandatory legal requirements specifically regulating the mode by which a municipal power is to be exercised. Cf. 10 McQuillin, Municipal Corporations (3d ed. 1950), sec. 29.26, p. 527. Where express contracts *344 must be preceded by certain steps or made in a certain way there is `considerable authority, however, to support the rule that a recovery may be had on a quantum meruit * * * upon the theory that it is not justice, where a contract is entered into between a municipality and another, in good faith, and the corporation has received benefits thereunder, to permit the municipality to retain the benefits without paying the reasonable value therefor * * *.'
`* * * there would seem to be no reason why a municipal corporation should not be held to respond upon principles of quasi-contract for services rendered or materials furnished under invalid contracts intra vires the corporation.'
`* * * while such contracts are void, and no recovery is permitted thereon, our courts hold that common honesty and fair dealing require that a county or municipality should not be permitted to receive the benefit of money, property, or services, without paying just compensation therefor * * *.'
In New Jersey, recovery on the quantum meruit where a contract was invalid was approved in Armitage v. Essex Construction Co., 88 N.J.L. 640, 641 (E. & A. 1916). In State v. Huehnle, 85 N.J.L. 220, 227-228 (E. & A. 1913), the former Court of Errors and Appeals held `that, if the express contract was not binding, there was still an implied contract,' and approved the rule that `a recovery against a municipal corporation (exists) upon an implied contract, where the express contract is set aside by the court.' The case of Eckert v. Town of West Orange, 90 N.J.L. 545, 549 (E. & A. 1917), was not basically opposed to the foregoing authorities and approved them and other similar decisions (see 90 N.J.L., at pages 550-552).
In the Armitage case, supra, good faith was relied on as an essential factor of the contractor's claim (see 88 N.J.L., at page 642). Cf. State v. Kuehnle, supra (85 N.J.L., at pages 228-229). In the Eckert case, supra, no resort to emergency powers (if any then existed) was attempted and the statute referred to was not complied with. The former Court of Errors and Appeals, in the Eckert case, supra [101 a. 271], held that recovery on the quantum meruit may be had `where there has been some unimportant irregularity in the proceedings, or an innocent mistake as to some matter of fact' (emphasis supplied), but in the case before it found a `direct defiance of an act of the Legislature.'"
In 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457 (1963) at page 462:
"* * * The law has become increasingly sensitive to the need for business integrity in public transactions as well as in private ones. True it is important to protect the public against official imprudence, but there is also the moral principle that a government which would encourage fair dealing in private transactions should insist upon nothing less of its own agencies. It is one thing to expect officials to *345 know and stay within their power and to call them to account if they willfully exceed it. It is something else to ask all who deal with a municipality to bear the burden of officialdom's ignorance of its own authority.
* * * In broad terms, it may be said that where a contract is beyond the power of the municipality or where the Legislature has explicity barred any liability if a restriction upon the exercise of power is not met, relief ordinarily will be denied. Slurzberg v. Bayonne, 29 N.J. 106, 115 (1959); Bauer v. Newark, 7 N.J. 426, 434-435 (1951). But if the difficulty is an irregularity in the exercise of a power the municipality does have and the Legislature has not decreed the consequences of the irregularity, our cases seek a just result. * * *"
I find here no deliberate or intentional wrongdoing or conscious attempt to evade the law by any of the parties involved. It is quite understandable that where the practice of purchasing books by the county library has been of many years standing, county officers and employees might sincerely believe the long established practice to be the correct one. This is particularly true where there has been no previous construction of the law by the courts. Plaintiff should therefore be entitled to be paid by the county on its claim of quantum meruit.
I find from the evidence that the reasonable value of the books sold by the plaintiff to the county is $8,375.84.
Judgment shall be entered for the plaintiff against the County of Camden for this amount without interest and without costs.
A judgment of no cause for action shall be entered in favor of the remaining defendants, without costs.