TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EDGEWATER
PARK, PLAINTIFF, v. EDGEWATER PARK HOUSING
AUTHORITY, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided April 28, 1982.

See also, 187 N.J.Super. 588.

*Frederick W. Hardt* for plaintiff (*Sever & Hardt,* attorneys).

*David Norcross* for defendant (*Myers, Matteo, Rabil & Norcross,* attorneys).

HAINES, A.J.S.C.

The Township Committee of the Township of Edgewater Park created defendant Housing Authority by ordinance on February 18, 1981. The Authority's first meeting was held on March 25, 1981, when it retained an architectural firm. On October 7, 1981, in connection with the advancement of a housing project, it applied to the Burlington County Board of Chosen Freeholders for a community development block grant in the amount of $100,000. The grant was awarded by the county and accepted by the Authority on December 3, 1981, at which time it also retained a firm of attorneys. On December 29, 1981 the Authority received three deeds purporting to convey title to real properties in Edgewater Park, two from the township committee and one from individuals. The conveyances were made without consideration.

Edgewater Park's governing body, having experienced a change in membership, now claims that the Authority's housing project has not received required municipal approval; that there has been a failure to comply with planning and zoning requirements; that the contracts entered into with architects and attorneys do not comply with statutory requirements and that the conveyances of land to the Authority are invalid. This suit was commenced to restrain the Authority from carrying out any of its undertakings, to set aside its contract and to void its deeds of conveyance. At the same time, the township committee introduced and passed on first reading, an ordinance to dissolve the Authority, an action challenged by the latter. The issues raised in this proceeding, including the central question of the power of the township committee to dissolve the Authority, involve no prohibitive factual disputes and are decided here in response to the order to show cause obtained by plaintiff.

The Housing Authority was created pursuant to the Local Housing Authorities Law, *N.J.S.A.* 55:14A–1 to 26, adopted in 1938. In 1949 housing authorities were empowered to undertake redevelopment projects, *N.J.S.A.* 55:14A–31 to 48, which powers were supplemented in 1956 by *N.J.S.A.* 55:14A–49 to 58. The 1938, 1949 and 1956 statutes are treated as constituting a single act, the Local Housing Authorities Law, by the *New Jersey Statutes Annotated.*

*N.J.S.A.* 55:14A–56 (part of the 1956 supplement) provides:

> The powers conferred in this act shall not be exercised by any authority until the governing body of the municipality, by resolution, has authorized the authority to exercise said powers. Nothing in this act shall prohibit a municipality, if it so determines, from exercising the powers conferred herein, either directly or by designating another public body to exercise the powers conferred by this act.

The municipality looks upon § 56 as an amendment to, and part of, the Local Housing Authorities Law, modifying *all* of its provisions. If this position is correct, the mere creation of an authority would confer no powers: a municipal delegation of power would be required before any authority could act. This is not the way in which housing authorities have been regarded.

Our courts have considered them to be independent entities, receiving their powers directly from the Legislature under the statute. Thus, in *Tumulty v. Jersey City,* 57 *N.J.Super.* 503 (App.Div.1959), the court said:

> The Local Housing Authorities Law clearly indicates that a local housing authority is not a municipal function, but is a separate independent entity which is "a body corporate and politic" created by the governing body of the municipality or county ... A local housing authority is not a subordinate municipal agency ... To the contrary, the Legislature did not want the authority dominated by the governing body. It was to remain a separate corporate entity. [at 511]

In *Monte v. Milat,* 17 *N.J.Super.* 260, 265 (Law Div.1952), Judge (later Justice) Proctor said:

> ... all that is entrusted to the municipality is the creation of the authority, not the delegation of its powers. The powers of the authority are derived, not from the municipality, but from the State, and the governing body of the municipality in deciding upon the desirability of creating an authority and in exercising the power of appointment and removal of its members is acting merely as a statutory agent.

*See, also English v. Newark Housing Auth.,* 138 *N.J.Super.* 425, 430 (App.Div.1976); *Paterson v. Paterson Housing Auth.,* 96 *N.J.Super.* 394, 404 (Law Div.1967); *O'Keefe v. Dunn,* 89 *N.J. Super.* 383, 396 (Law Div.1976). It is of some significance that all but one of these decisions was rendered after the 1956 act (containing § 56) was adopted.

 The difficulty with the interpretation and application of § 56 stems from its arrangement in *New Jersey Statutes Annotated.* This compilation treats the 1949 and 1956 laws (including § 56) as amendments to the Local Housing Authorities Law enacted in 1938. This is not correct. The 1949 legislation dealt with the redevelopment of blighted areas. It conferred redevelopment powers upon housing authorities, but did not, by title or otherwise, indicate that it constituted an amendment to the Local Housing Authorities Law. Nor was the 1956 legislation a part of the Local Housing Authorities Law. On the contrary, its title expressly states that it is "a supplement" to the *1949* redevelopment act, to which it refers by its complete title. Thus, § 56 is a part of a separate law and does not modify the

powers conferred upon local housing authorities, including defendant, by the Local Housing Authorities Law, *N.J.S.A.* 55:14A–1 to 26. The Edgewater Park Township Committee, therefore, may not dissolve the authority and may not modify or remove any of the powers which it acquired at the time of its creation.[1]

Other laws, however, come into play. *N.J.S.A.* 55:14A–11 provides: "All housing projects of an authority shall be subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated." Consequently, defendant's project is subject to *N.J.S.A.* 40:55D–31, which provides:

> Whenever the planning board shall have adopted any portion of the master plan, the governing body or other public agency having jurisdiction over the subject matter, before taking action necessitating the expenditure of any public funds, incidental to the location, character or extent of such project, shall refer the action involving such specific project to the planning board for review and recommendation in conjunction with such master plan and shall not act thereon, without such recommendation or until 45 days have elapsed after such reference without receiving such recommendation. This requirement shall apply to action by a housing . . . authority . . ., State, county or municipal.

The Edgewater Park Housing Authority has not presented any project to the township's planning board. It argues that it is not required to do so, on the ground that it must assemble plans before it has anything to present. This, however, is not what § 31 says. The Authority is required to submit its proposed project to the planning board "before taking action necessitating the expenditure of any funds, incidental to the location, character or extent of such project . . . ." It need not have actual plans before making the submission. On the contrary, it is well within the capacity of the Authority, acting without paid advisors or sophisticated plans, to advise the planning board of the general parameters of its project and its proposed location.

---

[1]Further, on the question of dissolution, it should be noted that *Paterson v. Paterson Housing Autho., supra,* at 407–408, held that a municipality could not dissolve an authority under *N.J.S.A.* 55:14A–56, although inadvertent dictum in that case, at 399, referred to the 1949 and 1956 laws as "amendments" to the Local Housing Authorities Law.

This is enough to accommodate a public airing of the project before the planning board and to permit its review and recommendations with reference to the master plan of the community. It demands little more than that already required by *N.J.S.A.* 55:14A–11, which provides: "In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any larger plan or long range program for the development of the area in which the housing authority functions." If the Authority could wait until completion of its plans for the project, there would be no point to the requirements of *N.J.S.A.* 40:55D–31; the plans would be reviewed by the planning board in any event, in connection with its usual subdivision and site plan obligations. That review would include consideration of the master plan. *N.J.S.A.* 40:55D–31 clearly requires a planning board review before regular site plan and subdivision procedures are initiated.

This conclusion is fully supported by the history of the legislation. *N.J.S.A.* 40:55–7, the original statutory provision relating to the review of public projects by planning boards, provided that "whenever the planning board shall have adopted the master plan ... no ... public hearing or structure ... or any improvement ... shall be constructed or authorized ... until the location, character and extent thereof has been submitted to the planning board for approval." In *Citizens to Protect Public Funds v. Parsippany—Troy Hills Bd. of Ed.,* 13 *N.J.* 172, 177 (1953), the Supreme Court held that a school board was not required to submit plans for a proposed new school building to a planning board before conducting a bond referendum. In the year of this decision the Legislature repealed *N.J.S.A.* 40:55–7, adopting the Municipal Planning Act of 1953. That act, in *N.J.S.A.* 40:55–1.13, provided:

> Whenever the planning board after public hearing shall have adopted any portion of the master plan, the governing body or other public agency having jurisdiction over the subject matter, *before taking action necessitating the expenditure of any public funds, incidental to the location, character or extent of one or more projects thereof,* shall refer action involving such specific project or projects to the planning board for review and recommendation .... [Emphasis supplied]

This language was repeated without significant change in *N.J. S.A.* 40:55D–31. The Legislature's insistence upon review and comment before *any* expenditure of public funds occurs is obvious.

■ The Authority has undertaken numerous actions "necessitating the expenditure of . . . public funds," namely, the acceptance of a $100,000 grant, the acceptance of conveyances of real property (to the extent the property was a municipal asset) and the employment of architects and attorneys. The obvious intention of § 31 is to prevent these financial commitments from being made until there has been public assurance that the plans of the Authority comply with the municipal master plan as well as opportunity for the planning board to make recommendations concerning the proposed project. The failure of the Authority to comply with that section of the Municipal Land Use Law requires the imposition of restraints prohibiting any action by the Authority involving the expenditure of public funds. Architects and attorneys may continue to act for the Authority, but only with the understanding that no public monies shall be paid to them under their contracts for any past services or for any future services except those rendered after there has been compliance with *N.J.S.A.* 40:55D–31. *S.H. Roemer Co. v. Camden Cty.,* 91 *N.J.Super.* 336 (Law Div.1966).

Plaintiff also argues that defendant's contracts with architects and attorneys must be set aside because they were executed without any compliance with the requirements of the Local Budget Law, *N.J.S.A.* 40A:4. Section 57 of that Law prohibits an "officer, board, body or commission" from incurring any liability or entering into any contract involving the expenditure of money unless an appropriation has been made for that purpose. The Authority has not adopted a budget and therefore made no appropriation in connection with these contracts.

■ This argument is not persuasive. A housing authority is not subject to the Local Budget Law. That law requires the

adoption of a budget only by the "governing body of each local unit." *N.J.S.A.* 40A:4–3. The words "governing body" are defined in *N.J.S.A.* 40A:4–2 to mean "the board of chosen freeholders of a county, or the commission, council, board or body having control of the finances of a municipality"; at most, and only indirectly, it may be said to control the finances of part of a municipality by reason of its control of housing project monies spent and received. The Local Budget Law was designed to regulate the financial affairs of the municipality itself, not those of an independent public entity. This is clearly indicated by the adoption of the following sections of the Law; while clearly applying to governing bodies of municipalities, they could not have been intended to affect housing authorities:

§ 10. States that the budget constitutes "an authorization of the amount to be raised by taxation for the purposes of the local unit." Housing authorities have no power of taxation.

§ 12. Relates to the assessment and collection of taxes.

§ 13. Provides for inclusion in the municipal budget of an amount to be raised for school purposes.

§ 21. Requires the budget to include sections covering the operation of any municipal public utility.

§ 23. Requires the budget to classify anticipated revenues as "surplus anticipated," "miscellaneous revenues," "receipts from delinquent taxes" and "amount to be raised by taxes to support municipal budget appropriations."

§ 40. Requires a reserve for uncollected taxes in the budget.

§ 45.3 Limits annual increases of municipal budgets (the "CAP" law).

Consequently, the Authority was not under any legal obligation to adopt a budget and make an appropriation before entering into contracts with architects and attorneys. Nevertheless, these contracts must be set aside.

■ They were made without public advertising for bids, as permitted in the case of professional services by *N.J.S.A.* 40A:11–5. However, § (1)(a)(i) of that statute provides:

The governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed once, in a newspaper authorized by law to publish its legal advertisements, a brief notice stating the nature, duration, service and *amount* of the

> contract, and that the resolution and contract are on file and available for public inspection in the office of the ... municipality. [Emphasis supplied]

No written contract (obviously necessary for filing purposes) was entered into by the Authority with any professional until December 3, 1981, although services were performed prior to that date. Consequently, the above statutory provision was violated. In addition, the only "reason" given in the notice published by the Authority was that professional services were involved. Since this provides a reference to the statutory exception, it may be enough, but there is no need to decide that issue since the notice in any event was not sufficient. It did not state the amount of either contract, merely giving hourly rates. This is not sufficient. For these reasons, the contracts must be set aside. *Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth.,* 67 *N.J.* 403 (1975). No recovery of fees may be based upon them. *S.H. Roemer Co. v. Camden Cty.,* 91 *N.J.Super.* 336 (Law Div.1966).[2]

The real property conveyances to the Authority are attacked on the ground that the procedures required by *N.J.S.A.* 40A:12–13 were not followed.[3] This statute requires the posting and advertising of a "list" of the properties to be sold, with minimum prices, "within five days following enactment" of the ordinance authorizing the sale. Offers to purchase may then be received for 20 days following the advertising.

The township adopted two ordinances to authorize its conveyances. Notice of the first ordinance was advertised seven days after final passage and failed to contain the required "list." Notice of final passage of the second ordinance was advertised

---

[2]Under *N.J.S.A.* 40A:11–15 the contract with the attorneys should have been for a period not to exceed 12 consecutive months. This limitation does not appear in the agreement. The architects were not so limited, since the statute provides an exclusion for a single public works project.

[3]These procedures would not have been necessary if the municipality had acted pursuant to *N.J.S.A.* 55:14B–4, which permits a conveyance to a housing authority without consideration and without any "appraisal, public notice, advertising or bidding."

within four days thereof but failed to contain the required "list." In addition, the conveyance of the property referred to in the second ordinance was made on December 29, 1981, only nine days after the notice was advertised and therefore 11 days too soon to permit compliance with the 20-day offer requirement of the statute. In view of these basic irregularities, the two conveyances made by the municipality must be set aside.

■ The third conveyance was made by individuals, not by the municipality. It constituted a subdivision, requiring planning board approval. *N.J.S.A.* 40:55D–37 a. That approval could be obtained only after compliance with *N.J.S.A.* 40:55D–10 b, which requires that "Any maps and documents for which approval is sought at a hearing shall be on file and available for public inspection at least ten days before the date of the hearing during normal business hours in the office of the administrative officer." The subdivision application was presented to the township's planning board and approved on December 17, 1981, the first time that any documents were filed with the board. As a result of this failure to comply with the ten-day requirement, the subdivision approval had no effect. The conveyance must be set aside, as requested by the municipality and permitted by *N.J.S.A.* 40:55D–55.